1  **DAVID J. STEELE, CA Bar No. 209797**
   Email: djslit@cph.com
2  **CHRISTIE, PARKER & HALE, LLP**
   **3501 Jamboree Road, Suite 6000-North Tower**
3  **Newport Beach, CA  92660**
   Telephone: (949) 476-0757
4  Facsimile: (949) 476-8640

5  **HOWARD A. KROLL, CA Bar No. 100981**
   Email: howard.kroll@cph.com
6  **CHRISTIE, PARKER & HALE, LLP**
   **350 W. Colorado Boulevard, Suite 500**
7  **Pasadena, CA  91105**
   Telephone: (626) 795-9900
8  Facsimile: (626) 577-8800

9  Attorneys for Plaintiffs
   VERIZON CALIFORNIA INC.
10 VERIZON TRADEMARK SERVICES LLC
   VERIZON LICENSING COMPANY

11

FILED
CLERK, U.S. DISTRICT COURT

FEB - 1 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

12            UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14                  WESTERN DIVISION

| | |
|---|---|
| 15  VERIZON CALIFORNIA INC.;<br>VERIZON TRADEMARK SERVICES<br>16  LLC; and VERIZON LICENSING<br>COMPANY,<br>17<br>          Plaintiffs,<br>18<br>     vs.<br>19<br>20  ABOVE.COM PTY LTD; TRELLIAN<br>LIMITED; TRELLIAN LLC; DAVID<br>21  WARMUZ; RENE WARMUZ a/k/a REN<br>WARMUZ; AND DOES 1-10,<br>22            Defendants. | Case No.<br>**CV11-00973** MMM(AJWx)<br><br>**COMPLAINT FOR<br>CYBERSQUATTING AND<br>CONTRIBUTORY<br>CYBERSQUATTING**<br><br>**DEMAND FOR TRIAL BY JURY** |

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

1

Plaintiffs, VERIZON CALIFORNIA INC., VERIZON TRADEMARK SERVICES LLC, and VERIZON LICENSING COMPANY (collectively, "Plaintiffs"), by and through their attorneys, Christie, Parker & Hale, LLP, file their complaint against ABOVE.COM PTY LTD, TRELLIAN LIMITED, TRELLIAN LLC, DAVID WARMUZ, RENE WARMUZ a/k/a REN WARMUZ, and DOES 1-10 (collectively, "Defendants"), for injunctive relief and damages as follows:

### Parties, Jurisdiction and Venue

1.     Except for allegations based on personal knowledge, such as allegations involving Plaintiffs' business and corporate identity, the allegations in this Complaint are based on information and belief.

2.     This is an action for cybersquatting and contributory cybersquatting under 15 U.S.C. § 1125(d).  This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

### Parties and Personal Jurisdiction

3.     Plaintiff Verizon California Inc. is a California corporation with its principal place of business in Thousand Oaks, California ("Verizon California").

4.     Plaintiff Verizon Trademark Services LLC is a Delaware limited liability company with its principal place of business in Arlington, Virginia ("Verizon Trademark Services").

5.     Plaintiff Verizon Licensing Company is a Delaware corporation with its principal place of business in Arlington, Virginia ("Verizon Licensing").

6.     Defendant Above.Com PTY LTD ("Above.com") is a business organized in Australia, with its principal place of business at 8 East Concourse, Beaumaris VIC 3193, Australia.  Above.com also operates an office within this district at 5220 Pacific Concourse, Suite 100, Los Angeles, CA 90045, and employs employees within this district.

7.     This Court has personal jurisdiction over Above.com because it

1    conducts business within this district, operates an office within this district, and

2    employs employees within this district, related to the unlawful activities at issue

3    in this Complaint.   The harm suffered by Plaintiffs flows directly from the

4    business conducted by Above.com within this district.

5          8.    Defendant Trellian Limited ("Trellian LTD") is a business organized

6    in Australia, with its principal place of business at 6-8 East Concourse, Beaumaris

7    VIC 3193, Australia.   Trellian LTD also operates an office within this district at

8    5220 Pacific Concourse, Suite 100, Los Angeles, CA 90045, and employs

9    employees within this district.

10         9.    This Court has personal jurisdiction over Trellian LTD because it

11   conducts business within this district, operates an office within this district, and

12   employs employees within this district, related to the unlawful activities at issue

13   in this Complaint.   The harm suffered by Plaintiffs flows directly from the

14   business conducted by Trellian LTD within this district.

15         10.   Defendant Trellian LLC ("Trellian LLC") is a California business,

16   with its place of business at 5220 Pacific Concourse, Suite 100, Los Angeles, CA

17   90045, and employs employees within this district.

18         11.   This Court has personal jurisdiction over Trellian LLC because it

19   conducts business within this district, operates an office within this district, and

20   employs employees within this district, related to the unlawful activities at issue

21   in this Complaint.   The harm suffered by Plaintiffs flows directly from the

22   business conducted by Trellian LLC within this district.

23         12.   Defendant David Warmuz is an individual residing in Australia.

24         13.   This Court has personal jurisdiction over David Warmuz because he

25   has conducted systematic and continuous business within California related to the

26   unlawful activities at issue in this Complaint.   This Court also has personal

27   jurisdiction over David Warmuz because he operates the business operations of

28   Above.com, Trellian LTD, and Trellian LLC, and engages in sale and marketing

efforts, within the district.  The harm suffered by Plaintiffs flows directly from the business conducted by this David Warmuz within this district.

14.    Defendant Rene Warmuz a/k/a Ren Warmuz ("Ren Warmuz") is an individual residing in Australia.

15.    This Court has personal jurisdiction over Ren Warmuz because he has conducted systematic and continuous business within California related to the unlawful activities at issue in this Complaint.  This Court also has personal jurisdiction over Ren Warmuz because he operates the business operations of Above.com, Trellian LTD, and Trellian LLC, and engages in sale and marketing efforts, within the district.  The harm suffered by Plaintiffs flows directly from the business conducted by Ren Warmuz within this district.

16.    Venue is proper in this Judicial District as to the Defendants pursuant to 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 1391(c) and/or 28 U.S.C. § 1391(d).

17.    Plaintiffs are not aware of the true names and capacities of Defendants named in this Complaint as Does 1-10, inclusive, and therefore brings this action against these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege these Defendants' true names and capacities when they are ascertained.

## PLAINTIFFS' BUSINESS

18.    In 2000, Bell Atlantic Corporation and GTE Corporation merged to form Verizon Communications Inc. ("Verizon Communications").  Today, Verizon Communications, its subsidiaries and affiliates, including Plaintiffs Verizon California, Verizon Trademark Services and Verizon Licensing, form one of the largest, well-known telecommunications companies in the world. Verizon Communications' subsidiaries (collectively, the "Verizon Companies") provide a full array of communications and entertainment product and service offerings, including local, long distance, and wireless telephone services; Internet

1   access; television services; phones; and related equipment. The Verizon

2   Companies have extensive operations in the United States and some of the

3   Verizon Companies also have operations throughout the world.

4        19.   A publicly traded company on the New York Stock Exchange and

5   the NASDAQ Global Sector Market, Verizon Communications generated annual

6   consolidated operating revenues in 2010 of $106.6 billion dollars, is a Dow 30

7   company, and ranks in the top twenty (20) of the Fortune 500 list. The Verizon

8   Companies employ a diverse workforce of more than 194,000 employees.

9            **Plaintiffs' VERIZON and VERIZON WIRELESS Trademarks**

10        20.   Verizon Trademark Services owns the VERIZON and VERIZON

11   WIRELESS trademarks and trade names, as well as logo versions that include a

12   "V Design" above or to the left of the word marks VERIZON and VERIZON

13   WIRELESS (collectively, the "VERIZON Marks").

14        21.   Verizon Licensing is the exclusive licensor of the VERIZON Marks

15   and has granted, directly or indirectly, licenses to use the VERIZON Marks to its

16   parent company, Verizon Communications, and to the various Verizon

17   Companies.

18        22.   The VERIZON Marks were publicized as early as the first week in

19   April 2000, when Cellco Partnership d/b/a Verizon Wireless, then doing business

20   as Bell Atlantic Mobile, began doing business as "Verizon Wireless." Upon the

21   launch of Verizon Wireless, on or about April 3, 2000, the VERIZON

22   WIRELESS name and trademark and related logos were featured on the Internet,

23   in television and radio advertisements, and in stories published in major

24   newspapers throughout the United States.

25        23.   The Verizon Companies have offered and provided a full array of

26   communications and entertainment products and services under the VERIZON

27   Marks.

28        24.   Currently, the Verizon Companies use the VERIZON Marks in

CHRISTIE, PARKER & HALE, LLP

5

connection with the provision of communications and entertainment products and services to consumers in the United States and around the world.

25.     The VERIZON Marks are widely known and recognized among consumers and members of the telecommunications industry.

26.     The VERIZON Marks are unique and distinctive and, as such, designate a single source of origin.

27.     The Verizon Companies spend and have spent billions of dollars since 2000 to extensively advertise and promote VERIZON and VERIZON WIRELESS branded products and services in the United States and around the world through a variety of media, including television, radio, print advertisements, direct mail, trade shows, conferences, and the Internet.

28.     As a result of the Verizon Companies' extensive and exclusive use, the VERIZON Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies.  The Verizon Companies expend substantial effort and expense to protect the VERIZON Marks and the VERIZON Marks' distinctiveness in the marketplace.

29.     Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VERIZON Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value. Further, the VERIZON Marks have long enjoyed unquestionable fame as a result of favorable general public acceptance and recognition.

30.     The VERIZON Marks are famous marks protected under 15 U.S.C. § 1125(c).

31.     The Verizon Companies' main Internet websites using the VERIZON Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com verizon.net, and verizonwireless.com.     Printouts from the websites at

verizon.com, verizon.net and verizonwireless.com evidencing such use of the VERIZON Marks are attached to this Complaint as Exhibit 1.

    32.    The VERIZON Marks are valid and enforceable trademarks.

    33.    Verizon Trademark Services owns the following United States trademark registrations for its various VERIZON Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| VERIZON | 2,886,813 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 9/21/04 |
| VERIZON | 3,085,712 | Various goods and services in Int'l Classes 9, 38, and 41. | 4/25/06 |
| VERIZON | 3,698,653 | Various goods and services in Int'l Classes 36 and 41 | 10/20/09 |
| VERIZON | 3,736,663 | Various goods in Int'l Classes 18, 24, 25 and 28. | 1/12/10 |
| *verizon* (logo) | 2,879,802 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 8/31/04 |
| VERIZON WIRELESS | 3,657,287 | Various goods in Int'l Class 9. | 7/21/09 |
| VERIZON WIRELESS | 3,077,271 | Various goods and services in Int'l Classes 9, 16, 35, 36, and 38. | 4/4/06 |
| *verizon wireless* (logo) | 3,660,522 | Various services in Int'l Classes 35. | 7/28/09 |

| | | | |
|---|---|---|---|
| verizon wireless | 3,657,677 | Various goods and services in Int'l Classes 9 and 35. | 7/21/09 |
| verizon wireless | 2,884,027 | Various goods and services in Int'l Class 38. | 9/14/04 |
| verizon wireless | 3,077,269 | Various goods and services in Int'l Class 9. | 4/4/06 |
| verizon wireless | 3,837,985 | Various services in Int'l Classes 35 and 38. | 8/24/10 |
| verizon wireless | 3,841,493 | Various goods and services in Int'l Classes 16, 35, and 38. | 8/31/10 |

A copy of the registration certificate for each of these registrations is attached to this Complaint as Exhibit 2.

> **Plaintiffs' VZ, VZ NAVIGATOR, VZACCESS, VZAPPZONE, VZEMAIL, VZGLOBAL, VZVOICE, VZW And VZW TONES Trademarks**

34.    Verizon Trademark Services owns the VZ, VZ NAVIGATOR, VZACCESS, VZAPPZONE, VZEMAIL, VZGLOBAL, VZVOICE, VZW and VZW TONES trademarks (collectively, the "VZ Marks").

35.    Verizon Licensing is the exclusive licensor of the VZ Marks, and has granted, directly or indirectly, licenses to use the VZ Marks to the Verizon Companies.

CHRISTIE, PARKER & HALE, LLP

36. The VZ trademark was first used on or about July 3, 2000. The VZW trademark was first used on or about August 15, 2000. The VZACCESS, VZEMAIL, VZGLOBAL and VZVOICE trademarks were first used on or about September 29, 2003. The VZ NAVIGATOR trademark was first used on or about January 30, 2006. The VZW TONES trademark was first used on or about May 25, 2005.

37. The Verizon Companies have offered and provided a full array of communications and entertainment products and services under the VZ Marks.

38. The Verizon Companies use the VZ Marks to provide wireless voice and data products and/or services to 101.1 million customers nationwide and use the VZ Marks in connection with the provision of the wireless voice and data products and/or services in California and in interstate commerce.

39. The VZ Marks are widely known and recognized among consumers and members of the telecommunications industry.

40. The VZ Marks are unique and distinctive and, as such, designate a single source of origin.

41. The Verizon Companies spend and have spent significant amounts of money each year since 2000 to advertise and promote the aforementioned products and services in the United States in connection with the VZ Marks.

42. As a result of the Verizon Companies' extensive and exclusive use, the VZ Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies. The Verizon Companies expend substantial effort and expense to protect the VZ Marks and the VZ Marks' distinctiveness in the marketplace.

43. Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VZ Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value.

44.   The Verizon Companies' main Internet websites using the VZ Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com verizon.net, verizonwireless.com, and vzw.com.   Printouts from these websites showing Plaintiffs' use of the VZ Marks are attached to this Complaint as Exhibit 3.

45.   The VZ Marks are valid and enforceable trademarks.

46.   Verizon Trademark Services owns the following United States trademark registrations for its VZ Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| VZ | 3,064,237 | Various goods and services in Int'l Classes 16 and 41. | 2/28/06 |
| VZ | 3,490,085 | Various services in Int'l Class 38. | 8/19/08 |
| VZ NAVIGATOR | 3,720,714 | Various goods and services in Int'l Classes 9 and 39. | 4/21/09 |
| VZACCESS | 2,973,813 | Various services in Int'l Class 38. | 7/19/05 |
| VZAPPZONE | 3,649,847 | Various goods and services in Int'l Classes 9 and 35. | 7/07/09 |
| VZEMAIL | 2,973,814 | Various services in Int'l Class 38. | 7/19/05 |
| VZGLOBAL | 3,083,568 | Various services in Int'l Class 38. | 4/18/06 |
| VZVOICE | 2,973,811 | Various services in Int'l Class 38. | 7/19/05 |
| VZW | 3,319,338 | Various services in Int'l Class 38. | 10/23/07 |

CHRISTIE, PARKER & HALE, LLP

10

| VZW TONES | 3,657,302 | Various goods and services in Int'l Classes 9 and 35. | 7/21/09 |
| --- | --- | --- | --- |

A copy of the registration certificate for each of these registrations is attached to this Complaint as Exhibit 4.

38.   Plaintiffs have made a considerable investment and have accrued substantial goodwill in the VERIZON Marks and the VZ Marks (collectively, "Plaintiffs' Marks").

## DEFENDANTS' BUSINESS

39.   Defendants are serial cybersquatters who register, use, and traffic in domain names that are confusingly similar to famous or distinctive trademarks owned by others, including Plaintiffs' Marks.

40.   Cybersquatters register domain names that are confusingly similar to trademarks in order to attract consumers who are attempting to reach the trademark owner's webpage.   The domain names registered often include a trademark combined with a descriptive word or phrase associated with the trademark (e.g., the trademark FORD and the descriptive phrase "pickup trucks" could be combined in the domain name fordpickuptrucks.com).   Cybersquatters also register common misspelling or mistyping of trademarks, again, to attract consumers who are attempting to reach the trademark owner's webpage (e.g., the misspelling FOORD registered as foord.com).   The aim of the cybersquatter is to register domain names consumers will visit so that advertisements can be displayed. Cybersquatters often target famous trademarks because consumers search for these trademarks online.

41.   Cybersquatters use the registered domain names to host webpages which contain advertisements.   Cybersquatters obtain the advertisements from Internet advertising companies, search engines, or affiliate programs.   When the advertisements are clicked by the consumers, the cybersquatters get paid from the Internet advertising companies, search engines, or affiliate programs.

CHRISTIE, PARKER & HALE, LLP

11

42.   Because of the civil liability associated with cybersquatting, cybersquatters often employ a number of methods to hide or conceal their true identities, and their involvement in the cybersquatting.  Most cybersquatters will list false identities and other false information in the ownership records for their domain names.  Cybersquatters will even create and use shell companies to conceal the identities of those involved and to frustrate trademark owners' efforts to stop the cybersquatting.

43.   Defendants' activities are entirely consistent with other cybersquatters' activities.  Defendants have registered many domain names that are confusingly similar to famous trademarks, including Plaintiffs' famous VERIZON Marks, in order to attract consumers who are attempting to reach the trademark owner's webpage.  Some of Defendants' registered domain names include a trademark combined with a descriptive word or phrase associated with the trademark (e.g., the trademark VERIZON and the descriptive phrase "prepaidphone" which was combined in the domain name verizonprepaidphone.com).  Defendants also registered common misspelling or mistyping of trademarks, again, to attract consumers who are attempting to reach the trademark owner's webpage (e.g., the misspelling VERIZON WIRELESS registered as vewrizonwireless.com).

44.   Defendants host webpages at the registered domain names which contain advertisements.  When the advertisements are clicked by the consumers Defendants get paid by Internet advertising companies.

45.   To avoid the civil liability associated with their cybersquatting, Defendants, employ a number of methods to hide their true identities and involvement in the cybersquatting operation.  Defendants list false identities and false information in the ownership records for their domain names.  Defendants have also created and used a number of shell-companies, alter egos and false identities to conceal their true identities and their involvement in the

1    cybersquatting.

2                    **Defendants' Concealment of Their Identities**

3           46.    Defendants have used shell-companies, alter egos or false identities

4    including, but not limited to, Above.com Domain Privacy, Domain Technician,

5    Mark Segal, Domain Park Limited, Galacaus Inc., Swallowlane Holdings Ltd,

6    Transure Enterprise Ltd, Trellian and Trellian Software (collectively, the "False

7    Identities") to conceal their true identities and their involvement in the

8    registration of, use of, of trafficking in domain names that are identical or

9    confusingly similar to the distinctive trademarks of others.

10          47.    At all times material to this action, each of the Defendants and the

11   False Identities, was the agent, servant, employee, partner, alter ego, subsidiary,

12   or joint venture of each of the other Defendants and False Identities and that the

13   acts of each of the Defendants and each of the False Identities were in the scope

14   of such relationship.

15          48.    At all times material to this action, in doing the acts or failing to act

16   as alleged in the Complaint, each of the Defendants and the False Identities acted

17   with the knowledge, permission, and the consent of each of the other Defendants

18   and False Identities.

19          49.    At all times material to this action, each of the Defendants and False

20   Identities aided and abetted each of the other Defendants and False Identities in

21   the acts or omissions alleged in this Complaint.

22          50.    One or more of the False Identities were listed as the registrants

23   within the WHOIS records for thousands of Internet domain names that were

24   registered and/or used for the benefit of the Defendants.

25          51.    One or more of the Defendants changed the listed registrant for

26   domain names from one False Identity to another False Identity to further conceal

27   their true identities and their involvement in the registration of, use of, or

28   trafficking in domain names that are identical or confusingly similar to the

CHRISTIE, PARKER & HALE, LLP

1    distinctive trademarks of others.

2        52.    The domain name verizwireless.com, along with other domain

3    names confusingly similar to Plaintiffs' Marks, was owned by the Defendants and

4    registered through Moniker.com.   The Moniker.com user account which

5    contained this domain name listed Ren Warmuz as the name in the account

6    information and listed Trellian (and Trellian LTD's corporate address), as the

7    company in the account information.

8        53.    The credit card used to pay Moniker.com for the registration of the

9    verizwireless.com, along with other domain names confusingly similar to

10    Plaintiffs' Marks, was owned by David Warmuz.  The billing address provided to

11    Moniker.com was the same address used by Trellian LTD.

12        54.    Defendants changed the whois data for verizwireless.com, along

13    with other domain names confusingly similar to Plaintiffs' Marks, to Domain

14    Park Limited, Vaea Street, Level 2, Lotemau Centre, Apia Somoa 0815 WS, one

15    of the False Identities used by Defendants.

16        55.    Defendants also changed the whois data for their domain names to

17    Above.com Domain Privacy, one of the False Identities used by Defendants.

**Defendants' Business Operations**

18

19        56.    Above.com is a registrar of Internet domain names accredited by the

20    Internet Corporation for Assigned Names and Numbers ("ICANN").

21        57.    David Warmuz is presently or was at one time an officer, director or

22    owner of Above.com.

23        58.    Ren Warmuz is presently or was at one time an officer, director or

24    owner of Above.com.

25        59.    Above.com is owned or operated by Trellian LTD.

26        60.    David Warmuz is presently or was at one time an officer, director or

27    owner of Trellian LTD.

28        61.    Ren Warmuz is presently or was at one time an officer, director or

1    owner of Trellian LTD.

2        62.    David Warmuz is presently or was at one time an officer, director or

3    owner of Trellian LLC.

4        63.    Ren Warmuz is presently or was at one time an officer, director or

5    owner of Trellian LLC.

6        64.    Above.com, in connection with its ICANN registrar business,

7    provides a service which intentionally hides or obscures the actual name of the

8    registrant of domain names (the "Above.com Privacy Service").  The Above.com

9    Privacy Service lists Above.com Domain Privacy as the registrant of the domain

10   name in the whois record instead of the actual name of the registrant.  Each of the

11   Defendants profit from the Above.com Privacy Service.

12       65.    Each of the Defendants directly use the Above.com Privacy Service

13   to hide or obscure its/his involvement in the registration, use, or trafficking in, of

14   domain names that infringe the rights of others, including Plaintiffs' rights.

15       66.    Each of the Defendants has received numerous actual notices that the

16   Above.com Privacy Service was used by registrants who have registered, used or

17   trafficked in domain names that infringe the rights of others.

18       67.    Above.com Privacy Service has been named as the respondent in at

19   least 68 UDRP complaints.  In each of these proceedings, the panelist ordered the

20   contested domain name transferred to the complainant.  A listing of these UDRP

21   complaints is attached to this Complaint as Exhibit 5.

22       68.    Trellian LTD provides a domain name monetization service (the

23   "Trellian Monetization Service").  Each of the Defendants profits from the

24   Trellian Monetization Service.

25       69.    Each of the Defendants directly use the Trellian Monetization

26   Service in connection with each of the Defendants' cybersquatting on domain

27   names that infringe the rights of others, including Plaintiffs' rights.

28       70.    Each of the Defendants has received numerous actual notices that the

CHRISTIE, PARKER & HALE, LLP

Trellian Monetization Service was used by registrants who have registered, used or trafficked in domain names that infringe the rights of others.

**Defendants' Registration, Use, and Trafficking In Domain Names That Are Confusingly Similar to Trademarks of Other Trademark Owners**

71.    Defendants registered or used, and/or provided Above.com Privacy Service to hide or obscure the actual registrant of, thousands of domain names that are confusingly similar to famous or distinctive trademarks owned by others (collectively, the "Confusingly Similar Domain Names").  A list of some of these Confusingly Similar Domain Names is attached to this Complaint as Exhibit 6. While Defendants have targeted virtually every famous trademark in existence, for the sake of brevity, Exhibit 6 details only one famous trademark for each letter of the alphabet.

72.    One or more of the Defendants or False Identities was or is the registrant for many of the Confusingly Similar Domain Names.  Printouts of WHOIS data for a sample of the Confusingly Similar Domain Names showing a Defendant or False Identity as the registrant are attached to this Complaint as Exhibit 7.

73.    Defendants used the Confusingly Similar Domain Names to divert for commercial gain Internet users searching for well-known or famous trademarks.

74.    Defendants, as the registrant's authorized licensee, used many of the Confusingly Similar Domain Names in connection with the Trellian Monetization Service to divert for commercial gain Internet users searching for well-known or famous trademarks.

75.    Defendants operate websites at each of the Confusingly Similar Domain Names which display Hypertext Markup Language ("HTML") links featuring goods or services that are directly competitive with those sold or provided in connection with the famous or distinctive trademarks.  Screenshots of

some of the websites hosted at a sample of each of the Confusingly Similar Domain Names are attached to this Complaint as Exhibit 8.

76.    When Internet users clicked on one or more of the displayed HTML links on these websites hosted at each of the Confusingly Similar Domain Names, Defendants received payments from one or more advertisers, search engines, or affiliate programs.

**Defendants' Registration, Use, and Trafficking In Domain Names That Are Confusingly Similar to Plaintiffs' Marks**

77.    Plaintiffs have not authorized Defendants to use Plaintiffs' Marks in any way.

78.    Defendants have registered or used, and/or provided Above.com Privacy Service to hide or obscure the actual registrant of, over 183 domain names which are confusingly similar to Plaintiffs' Marks, including at least the following:

| | |
|---|---|
| aboutyouvzwcorp.com | infomanagervzwcorp.com |
| accessoryaccessvzw.com | itvzw.com |
| activateverizon.net | loginvzw.com |
| advzwcorp.com | minimensajesverizon.com |
| animatedmessagingvzw.com | mvzwpix.com |
| assistvzwshop.com | myhomeverizon.net |
| b2bvzw.com | mypicsvzw.com |
| centuralverizon.net | myvzon.com |
| communityvzochat.com | myvzpics.com |
| downloadverizon.com | netvzwmconfig.com |
| freetonesvzw.com | picvz.com |
| homeverison.net | pixorflixvzw.com |
| httvzwpix.com | searchvzwpix.com |
| hubvzw.com | syncvzw.com |

CHRISTIE, PARKER & HALE, LLP

| | | |
|---|---|---|
| 1 | thevzcom.com | verizo9n.net |
| 2 | tryvzwfree.com | verizob.net |
| 3 | v3erizon.com | verizobn.net |
| 4 | v4erizon.com | verizoin.net |
| 5 | vderizon.net | verizoncarrers.com |
| 6 | vedrizon.net | verizonds.com |
| 7 | veerizondsl.com | verizonfiles.com |
| 8 | veerizonwierless.com | verizonh.net |
| 9 | veirizon.net | verizonm.net |
| 10 | ver9izon.com | verizonmwmc.com |
| 11 | vereizon.net | verizonmyprepay.com |
| 12 | veri8zon.com | verizonprepaidphone.com |
| 13 | veri8zon.net | verizonreward.com |
| 14 | veri9zon.net | verizonvoice.com |
| 15 | veriaoncentral.com | verizonweriles.com |
| 16 | verioncenter.com | verizonwhirless.com |
| 17 | veriseon.com | verizonwirelessmyprepaid.com |
| 18 | verisoncable.com | verizonwirelessmyprepay.com |
| 19 | verisons.net | verizoom.com |
| 20 | verisonvireless.com | verizwireless.com |
| 21 | verisonwirelessarena.com | verizxon.net |
| 22 | verizaon.net | verizzon.net |
| 23 | verizinphones.com | veroizonphones.com |
| 24 | verizionbusiness.com | verozonm.com |
| 25 | verizionmail.net | verozonmail.com |
| 26 | verizionworeless.com | verozonwirelss.com |
| 27 | verizo0n.net | verozonwirless.com |
| 28 | verizo9n.com | verozonworeless.com |

CHRISTIE, PARKER & HALE, LLP

18

| | | |
|---|---|---|
| 1 | verrizonwwireless.com | vzgetpics.com |
| 2 | vertizontaalxs4all.com | vzn-pic.com |
| 3 | veruizonphones.com | vznrewards.com |
| 4 | vervizonwireless.com | vznwirelees.com |
| 5 | vewrizonvireless.com | vzoforum.com |
| 6 | vewrizonwireless.com | vzpis.com |
| 7 | vierizon.net | vzpiw.com |
| 8 | vierizonwirless.com | vzplus.com |
| 9 | vmfvzw.com | vzrizon.com |
| 10 | vrerizonwirelless.com | vzsbenefits.com |
| 11 | vriszon.com | vzshops.com |
| 12 | vrivzinwirless.com | vzunlimited.com |
| 13 | vrrizoncentral.net | vzvshop.com |
| 14 | vvm-vzwbe.com | vzw20.com |
| 15 | vvzwu-wienacat.com | vzwap.com |
| 16 | vwerizonewireless.com | vzwcomrbt.com |
| 17 | vwrizonyellopages.com | vzw-e-alues.com |
| 18 | vz5net.com | vzwebintranet.com |
| 19 | vzaccessconnect.net | vzwed.com |
| 20 | vzaccessmanager.net | vzwemployee.com |
| 21 | vzads.com | vzwflixpics.com |
| 22 | vzbwireless.com | vzwhip.com |
| 23 | vzcam.net | vzwibro.com |
| 24 | vzdpix.com | vzwierless.com |
| 25 | vzelectronics.com | vzwirelessbenefits.com |
| 26 | vzepics.com | vzwirells.com |
| 27 | vzeskins.com | vzwirelsess.com |
| 28 | vzewpix.com | vzwopix.com |

| | |
|---|---|
| 1 | vzwphoto.com | vzwtuitioncael.com |
| 2 | vzwphotoablum.com | vzwvmf.com |
| 3 | vzwpicsp.com | vzwvpix.com |
| 4 | vzwpiox.com | vzxpiz.com |
| 5 | vzwpixflixplace.com | vzxtext.com |
| 6 | vzwpixj.com | webapp1mwestvzwcorp.com |
| 7 | vzwpixplcae.com | wirelessfyncvzw.com |
| 8 | vzwpixplce.com | wirelesssynchvzw.com |
| 9 | vzwpixpllace.com | wirelesssyncvzzw.com |
| 10 | vzwpixs.net | wvwrizon.com |
| 11 | vzwpizandfilx.com | wvzringback.com |
| 12 | vzwpizplace.com | wwvzwpizsplace.com |
| 13 | vzwprepay.com | www-meinvz.net |
| 14 | vzwpxs.com | www47wirelesssyncvzw.com |
| 15 | vzwresults.com | wwwchaperonevzw.com |
| 16 | vzwrigtones.com | wwwmeinvz.net |
| 17 | vzwringtons.com | wwwverizion.net |
| 18 | vzwrls.com | wwwvzq.com |
| 19 | vzw-r-values.com | wwwvzwbenefits.com |
| 20 | vzwshoprebates.com | wwwvzwcareers.com |
| 21 | vzwsignup.com | wwwvzwsurvey.com |
| 22 | vzwstorefront.com | |

(collectively, the "Infringing Domain Names").

79. Each of the Infringing Domain Names is confusingly similar to Plaintiffs' Marks.

80. One or more of the Defendants or the False Identities was or is the registrant for many of the Infringing Domain Names. Printouts of WHOIS data

for a sample of the Infringing Domain Names showing a Defendant or False Identity as the registrant are attached to this Complaint as Exhibit 9.

81.    Defendants, as either the domain name registrant or that registrant's authorized licensee, used many of the Infringing Domain Names to divert for commercial gain Internet users searching for Plaintiffs' Marks.

82.    Defendants operated websites at many of the Infringing Domain Names which displayed HTML links featuring goods or services that are directly competitive with those sold or provided in connection with Plaintiffs' Marks. Screenshots of some of the websites hosted at a sample of each of the Infringing Domain Names are attached to this Complaint as Exhibit 10.

83.    When Internet users clicked on one or more of the displayed HTML links on these websites hosted at each of the Infringing Domain Names, Defendants received payments from one or more advertisers, search engines, or affiliate programs.

### Harm to Plaintiffs and the General Public

84.    Defendants' unauthorized registration and use of the Infringing Domain Names, Defendants' providing the Above.com Privacy Service, and Defendants' providing the Trellian Monetization Service, are likely to cause confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Domain Names, and are likely to falsely suggest a sponsorship, connection, license, or association of Defendants, and the Infringing Domain Names, with Plaintiffs.

85.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and Plaintiffs' Marks.

86.    Defendants' activities have irreparably harmed, and if not enjoined will continue to irreparably harm, the general public who has an inherent interest in being free from confusion, mistake, and deception.

### FIRST CAUSE OF ACTION

**[Cybersquatting on Plaintiffs' Marks**

**Under 15 U.S.C. § 1125(d)]**

87.     Plaintiffs reallege and incorporate by reference each of the paragraphs above as though fully set forth here.

88.     Defendants registered and used the Infringing Domain Names.

89.     Defendants were either the domain name registrant or that registrant's authorized licensee of the Infringing Domain Names.

90.     Plaintiffs' Marks were distinctive and federally registered at the USPTO at the time Defendants registered and used the Infringing Domain Names.

91.     The Infringing Domain Names are confusingly similar to Plaintiffs' Marks.

92.     Defendants registered, trafficked in, or used the Infringing Domain Names in bad faith and with a bad faith intent to profit from Plaintiffs' Marks.

93.     Defendants do not have any intellectual property rights or any other rights in Plaintiffs' Marks.

94.     None of the Infringing Domain Names consist of the legal name of any Defendant, nor a name that is otherwise commonly used to identify any Defendant.

95.     Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

96.     Defendants have not made any *bona fide* fair use of Plaintiffs' Marks on a website accessible under any of the Infringing Domain Names.

97.     Defendants registered and used the Infringing Domain Names to divert consumers from Plaintiffs' websites to websites accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement

1    of these websites.

2    98.   Defendants provided material and misleading false contact

3    information when applying for the registration of the Infringing Domain Names.

4    99.   Defendants intentionally failed to maintain accurate contact

5    information in connection with the registration of the Infringing Domain Names.

6    100.   Defendants have engaged in a pattern of providing material and

7    misleading false contact information when applying for the registration of domain

8    names.

9    101.   Defendants have acquired multiple domain names which Defendants

10   know are identical or confusingly similar to marks of others that were distinctive

11   at the time of registration of such domain names, or dilutive of famous marks of

12   others that were famous at the time of registration of such domain names.

13   102.   The VERIZON Marks are famous within the meaning of 15 U.S.C. §

14   1125(c).

15   103.   Many of the Infringing Domain Names are identical or confusingly

16   similar to Plaintiffs' Marks.

17   104.   Defendants' registration, use, or trafficking in the Infringing Domain

18   Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling

19   Plaintiffs to relief.

20   105.   Defendants engaged in the activities complained of above with a bad

21   faith intent to profit from the registration or maintenance of the Infringing

22   Domain Names.

23   106.   By reason of Defendants' acts alleged herein, Plaintiffs' remedy at

24   law is not adequate to compensate them for the injuries inflicted by Defendants.

25   Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief

26   pursuant to 15 U.S.C. § 1116.

27   107.   By reason of Defendants' acts alleged herein, Plaintiffs are entitled

28   to recover Defendants' profits, actual damages and the costs of the action, or

CHRISTIE, PARKER & HALE, LLP

23

1  statutory damages under 15 U.S.C. § 1117, on election by Plaintiffs, in an amount

2  of One Hundred Thousand Dollars ($100,000) per domain name infringement.

3        108.   This is an exceptional case making Plaintiffs eligible for an award of

4  attorneys' fees under 15 U.S.C. § 1117.

5                       **SECOND CAUSE OF ACTION**

6            **[Contributory Cybersquatting on Plaintiffs' Marks**

7                       **Under 15 U.S.C. § 1125(d)]**

8        109.   Plaintiffs reallege and incorporate by reference each of the

9  paragraphs above as though fully set forth here.

10       110.   Defendants contributed to the registration or use of the Infringing

11 Domain Names.

12       111.   Defendants provide the Above.com Privacy Service in connection

13 with the registration or use of the Infringing Domain Names, and profit from the

14 Above.com Privacy Service.

15       112.   Defendants are able to monitor the use of the Above.com Privacy

16 Service

17       113.   Defendants had control over the Above.com Privacy Service.

18       114.   Defendants are aware that the Above.com Privacy Service is used by

19 registrants who have registered, used or trafficked in domain names that infringe

20 the rights of others, including Plaintiffs' rights.

21       115.   Defendants continue to supply the Above.com Privacy Service with

22 knowledge that the service is used by registrants to infringe the rights of others,

23 including Plaintiffs' rights.

24       116.   Defendants provide the Trellian Monetization Service in connection

25 with the registration or use of the Infringing Domain Names, and profit from the

26 Trellian Monetization Service.

27       117.   Defendants are able to monitor the use of the Trellian Monetization

28 Service.

118.   Defendants have control over the Trellian Monetization Service.

119.   Defendants are aware that the Trellian Monetization Service is used by registrants who have registered, used or trafficked in domain names that infringe the rights of others, including Plaintiffs' rights.

120.   Defendants continue to supply the Trellian Monetization Service with knowledge that the service is used by registrants to infringe the rights of others, including Plaintiffs' rights.

121.   Plaintiffs' Marks were distinctive and federally registered at the USPTO at the time Defendants registered the Infringing Domain Names.

122.   The Infringing Domain Names are confusingly similar to Plaintiffs' Marks.

123.   Defendants or their customers registered, trafficked in, or used the Infringing Domain Names in bad faith and with a bad faith intent to profit from Plaintiffs' Marks.

124.   Neither Defendants nor Defendants' customers have any intellectual property rights or any other rights in Plaintiffs' Marks.

125.   The Infringing Domain Names do not consist of the legal name of any Defendant, nor any person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service.

126.   Defendants, and any person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service, have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

127.   Defendants, and any person or entity to whom any Defendant supplied the Above.com Privacy Service or the Trellian Monetization Service, have made any *bona fide* fair use of Plaintiffs' Marks on a website accessible under any of the Infringing Domain Names.

128.   Defendants, or a person or entity to whom Defendants supplied the

Above.com Privacy Service or the Trellian Monetization Service, registered and used the Infringing Domain Names to divert consumers from Plaintiffs' websites to websites accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of these websites.

129.  Defendants, or a person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service, provided material and misleading false contact information when applying for the registration of the Infringing Domain Names.

130.  Defendants intentionally failed to maintain accurate contact information in connection with the registration of the Infringing Domain Names.

131.  Defendants, or a person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service, have engaged in a pattern of providing material and misleading false contact information when applying for the registration of domain names.

132.  Defendants, or a person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service, have acquired multiple domain names which they knew were identical or confusingly similar to marks of others that were distinctive at the time of registration of such domain names, or dilutive of famous marks of others that were famous at the time of registration of such domain names.

133.  The Verizon Marks are famous within the meaning of 15 U.S.C. § 1125(c).

134.  Many of the Infringing Domain Names are identical or confusingly similar to Plaintiffs' Marks.

135.  The registration, use, or trafficking in the Infringing Domain Names by Defendants, or a person or entity to whom Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service, constitutes

CHRISTIE, PARKER & HALE, LLP

26

cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

136.  Defendants supplied the Above.com Privacy Service or the Trellian Monetization Service with a bad faith intent to profit from the registration or maintenance of the Infringing Domain Names.

137.  Defendants' supplying the Above.com Privacy Service or the Trellian Monetization Service constitutes contributory cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

138.  By reason of Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

139.  By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiffs, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement.

140.  This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**Request For Relief**

Therefore, Plaintiffs respectfully request judgment as follows:

1.  That the Court enter a judgment that all Defendants:

(a)  have violated the rights of Plaintiffs in Plaintiffs' Marks in violation of 15 U.S.C. § 1125(d);

(b)  be ordered to transfer every domain name they own which is identical or confusingly similar to Plaintiffs' Marks to Verizon Trademark Services;

2.  That Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with Defendants be preliminarily and permanently enjoined from the following activities:

(a)    Registering or using, in any manner, any Internet domain name that incorporates, in whole or in part, Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

(b)    Using any of Plaintiffs' Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether Defendants are affiliated or associated with or sponsored by Plaintiffs;

(c)    Registering any Internet domain name that incorporates, in whole or in part, Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

(d)    Registering any domain name without providing complete and accurate contact information, including Defendants' full legal name as the registrant, and not maintaining complete and accurate contact information, including Defendants' full legal name as the registrant;

(e)    Cybersquatting against Plaintiffs or any violation of Plaintiffs' trademark rights; and

(f)    Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 2(a) through 2(e) above;

3.    That Defendants be ordered to engage in corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from Defendants' unlawful acts complained of above;

4.    That Defendants be ordered to account to Plaintiffs for, and disgorge, all profits they have derived by reason of the unlawful acts complained of above;

5.    That Defendants be ordered to pay damages, and that those damages be trebled, under 15 U.S.C. § 1117;

6.    That Defendants be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiffs, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement;

7.    That Defendants be ordered to pay Plaintiffs' reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117;

8.    That Defendants be ordered to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon Defendants; and

9.    That Plaintiffs be awarded such other relief as may be appropriate.

CHRISTIE, PARKER & HALE, LLP

DATED: February 1, 2011    By _____

David J. Steele
Howard A. Kroll

Attorneys for Plaintiffs
VERIZON CALIFORNIA INC.
VERIZON TRADEMARK SERVICES LLC
VERIZON LICENSING COMPANY

CHRISTIE, PARKER & HALE, LLP

29

1

## DEMAND FOR TRIAL BY JURY

2      Plaintiffs, VERIZON CALIFORNIA INC., VERIZON TRADEMARK

3  SERVICES LLC, and VERIZON LICENSING COMPANY, hereby demand a

4  trial by jury to decide all issues so triable in this case.

5

6                                    CHRISTIE, PARKER & HALE, LLP

7

8  DATED: February 1, 2011          By

9                                       David J. Steele

10                                      Howard A. Kroll
                                        Attorneys for Plaintiffs

11                                   VERIZON CALIFORNIA INC.

12                                   VERIZON TRADEMARK SERVICES LLC
                                     VERIZON LICENSING COMPANY

13

14

15

16

17

   SCL IRV1120387.5-*-02/1/11 10:42 AM
18

19

20

21

22

23

24

25

26

27

28