1   Derek A. Newman, State Bar No. 190467
    derek@newmanlaw.com
2   John Du Wors, State Bar No. 233913
    duwors@newmanlaw.com
3   NEWMAN DU WORS LLP
    100 Wilshire Blvd, Suite 950
4   Santa Monica, CA 90401
    Telephone:   (310) 359-8200
5   Facsimile:   (310) 359-8190

6   Attorneys for Defendants
    ABOVE.COM PTY LTD, TRELLIAN
7   LIMITED, TRELLIAN LLC, DAVID
    WARMUZ, and RENE WARMUZ
8

9                   UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA
11                       WESTERN DIVISION

12  VERIZON CALIFORNIA INC.;
    VERIZON TRADEMARK SERVICES        Case No. CV11-00973 ABC-CW
13  LLC; and VERIZON LICENSING
    COMPANY,                          **MEMORANDUM OF POINTS
14                                    AND AUTHORITIES IN
                   Plaintiffs,        SUPPORT OF MOTION OF
15                                    DEFENDANTS ABOVE.COM
          v.                          PTY LTD, TRELLIAN
16                                    LIMITED, TRELLIAN LLC,
    ABOVE.COM PTY LTD; TRELLIAN        AND DAVID AND RENE
17  LIMITED; TRELLIAN LLC; DAVID      WARMUZ FOR
    WARMUZ; RENE WARMUZ a/k/a/        PARTIAL DISMISSAL
18  REN WARMUZ; AND DOES 1-10,         UNDER FED. R. CIV. P.
                                      12(b)(6)**
19
                   Defendants.        Date: July 18, 2011
20
                                      Time: 10:00 a.m.
21
                                      The Honorable Audrey B. Collins
22
                                      Roybal Courthouse
23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   FACTS ALLEGED ................................................................................. 2

      A.   Above.com is a registrar that provides monetization and privacy
           services. .................................................................................. 2

      B.   Verizon alleges that Above.com directly cybersquatted. ............................ 3

      C.   Verizon asks this court to punish Above.com for the actions of third
           parties. .................................................................................... 3

III.  DISCUSSION ........................................................................................ 4

      A.   The plain language of the ACPA precludes a claim for contributory
           cybersquatting. .......................................................................... 4

      B.   The legislative history demonstrates that Congress intended only a direct
           cause of action. .......................................................................... 5

      C.   Contributory trademark infringement differs from Verizon's novel cause
           of action. ................................................................................. 8

      D.   Contributory cybersquatting would make innocent conduct illegal. ............. 9

      E.   This Court should decline to follow nonbinding district courts whose
           analysis was sparse and inconsistent with the plain language of the
           ACPA. .................................................................................. 11

      F.   This Court should not create a new cause of action for contributory
           cybersquatting because adequate alternative remedies exist. .................. 13

IV.   CONCLUSION .................................................................................... 14

1
2

# CASES

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   131 S. Ct. 1436 (2011) ........................................................................................ 4

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ............................................................................. 4

*BedRoc, Ltd. v. United States*,
   541 U.S. 176 (2004) ............................................................................................ 5

*Bensusan Restaurant Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997) ................................................................................ 6

*CFTC v. White Pine Trust Corp.*,
   574 F.3d 1219 (9th Cir. 2009) .......................................................................... 4

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ............................................................................................. 13

*DSPT International, Inc. v. Nahum*,
   624 F.3d 1213 (9th Cir. 2010) ......................................................................... 12

*Ford Motor Co. v. Great Domains.com, Inc.*,
   177 F. Supp. 2d 635 (E.D. Mich. 2001) .................................................... 11, 12

*Hawaii v. Office of Hawaiian Affairs*,
   129 S. Ct. 1436 (2009) ....................................................................................... 4

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
   456 U.S. 844 (1982) ........................................................................................... 6

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ............................................................................ 9

*MDY Industries, LLC v. Blizzard Entm't, Inc.*,
   No. 09-15932, 2011 U.S. App. LEXIS 3428 (9th Cir. Feb. 17, 2011) ........... 8

*Microsoft Corp. v. Shah*,
   2011 U.S. Dist. LEXIS 2995 (W.D. Wash. Jan. 12, 2011) ................... 11, 12, 13

*Pollard v. GEO Group, Inc.*,
   629 F.3d 843 (9th Cir. 2010) ........................................................................... 13

*Solid Host, NL v. Namecheap, Inc.*,
   652 F. Supp. 2d 1092 (C.D. Cal. 2009) ................................................. 9, 11, 12

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) .......................................................................................... 13

*Verizon California v. Navigation Catalyst Systems*,
   568 F. Supp. 2d 1088 (C.D. Cal. 2008) ............................................................ 2

*Verizon California, Inc. et al. v. Lead Networks Domains Private Limited et al.,*
  Case No. 09-00613-ABC ................................................................................ 2

*Winn v. Ariz. Christian Sch. Tuition Org.,*
  562 F.3d 1002 (9th Cir. 2009) ...................................................................... 4


## STATUTES

15 U.S.C. § 1114 .............................................................................................. 1

15 U.S.C. § 1125(a)(1)(A) .............................................................................. 9

15 U.S.C. § 1125(d)(1)(A) ....................................................................... 4, 5, 9

15 U.S.C. § 1125(d)(1)(A)(i)-(ii) ................................................................... 4

15 U.S.C. § 1125(d)(1)(D) .............................................................................. 5

15 U.S.C. 1125(d)(3) ....................................................................................... 6


## RULES

FED. R. CIV. P. 12(b)(6) ................................................................................. 4


## OTHER AUTHORITIES

145 Cong. Rec. S10516 (daily ed. Aug. 5, 1999) ......................................... 7

145 Cong. Rec. S10517 (daily ed. Aug. 5, 1999) ......................................... 6

145 Cong. Rec. S9754 (daily ed. Jul. 29, 1999) ........................................... 7

145 Cong. Rec. S9755 (daily ed. Jul. 29, 1999) ........................................... 5

S. Rep. No. 106-140 (1999) ........................................................................ 5, 6

# I.    INTRODUCTION

The Anticybersquatting Consumer Protection Act (ACPA) prevents only the registration, trafficking, or use of domain names that are confusingly similar to trademarks. The scope of the act is clear, and Congress did not extend liability beyond direct violators. But Verizon asks this Court to create a judicial expansion of the ACPA by finding a cause of action for contributory cybersquatting that would make it illegal to provide countless services that a cybersquatter might use in connection with its wrongdoing. A contributory cybersquatting claim is overbroad because most service providers cannot anticipate liability or prevent cybersquatting. And the ACPA's plain language and legislative history preclude Verizon's novel claim.

Above.com[1] is a domain name registrar. It is not liable under 15 U.S.C. § 1114 for "the registration or maintenance of a domain name for another". Above.com provides additional services. Like most registrars, it offers a privacy service that allows domain name registration without the registrant's address and phone number being publicly listed in the "whois" domain-name directory. Verizon claims that Above.com provides other "monetization services" but does not explain what those services are.

Above.com's services are legal—registering and monetizing domain names are the Internet's basic building blocks. Verizon asks this Court to require that Above.com and every other domain name services provider police the Internet, inquiring as to their customers' good or bad faith intent and imposing liability if a third party uses their services in connection with cybersquatting. The ACPA does not create such broad liability, and Verizon's request for a new, judicially created,

---

[1] Verizon alleges the same facts and claims against all defendants. Although this motion addresses Above.com in particular, the arguments apply to all defendants.

**MEM. OF P&A IN SUPP. OF DEFS'
MOT. FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1 | remedy should be refused.

2 |       Verizon has separately alleged that the defendants participated with others to

3 | directly cybersquat. If successful, Verizon can obtain all the relief it seeks through

4 | its direct claims. Unlike other defendants before this Court who Verizon has sued

5 | in the past[2], none of these defendants are attempting to shirk liability if Verizon

6 | can prove that they violated the statute. But if they did not, then Verizon should

7 | sue the direct infringers who caused it damage. This Court should not require

8 | Internet service providers to determine the bad faith intent of their customers to

9 | avoid liability. Verizon's contributory cybersquatting claims should be dismissed.

## II.    FACTS ALLEGED

### A.    Above.com is a registrar that provides monetization and privacy services.

13 |       Above.com is a domain-name registrar, accredited to accept new domain-

14 | name registrations from registrants (*i.e.,* domain-name owners). (Complaint at ¶

15 | 56.) Like many registrars, Above.com also offers a privacy service. (Id. at ¶ 64.)

16 | The Above.com Privacy Service allows a customer to register a domain name

17 | without having its name and personal information published in a public "whois"

18 | directory. (Id.) Verizon also alleges that Above.com offers a "monetization

19 | service" but does not explain what a monetization service is or does. (Id. at ¶ 68.)

---

[2] Compare *Verizon California, Inc. et al. v. Lead Networks Domains Private Limited et al.*, Case No. 09-00613-ABC (Defendant attempted to avoid liability by claiming that even though he was served personally in California, service was defective). The individual defendants here waived service (Dkt. No. 15) so that Verizon could avoid the costs and delay of serving them in Australia. Also compare *Verizon California v. Navigation Catalyst Systems*, 568 F. Supp. 2d 1088 (C.D. Cal. 2008)(Defendant attempted to avoid liability by arguing that Verizon has unclean hands because it also monetizes domain names that are confusingly similar to trademarks). The defendants here acknowledge that monetizing domain names is lawful, and neither they nor Verizon should face any legal consequences for offering that service.

**B.      Verizon alleges that Above.com directly cybersquatted.**

Verizon alleges that Above.com conspired with other defendants and third parties to register, with a bad faith intent to profit from, domain names that are identical or confusingly similar to Verizon's trademarks. (Complaint at ¶¶ 87-108.) Verizon claims that Above.com used a series of "shell companies, alter egos and false identities" to conceal Above.com's participation. (Id. at ¶ 45.) According to Verizon, Above.com or its coconspirators then created webpages via the registered domain names containing advertisements. (Id. at ¶ 44.) Verizon contends that Above.com profited from the scheme by receiving payments from advertisers when consumers clicked on the advertisements. (Id.) Verizon claims that "each of the Defendants and the False Identities . . . was the agent, servant, employee, partner, alter ego, subsidiary, or joint venture of each of the other Defendants and False Identities." (Id. at ¶ 47.)

**C.      Verizon asks this court to punish Above.com for the actions of third parties.**

In addition to Verizon's claim that Above.com acted with others to directly cybersquat, Verizon alleges that Above.com—by providing privacy and monetization services—"contributed to the registration or use of the Infringing Domain Names." (Complaint at ¶ 110.) In this separate cause of action, Verizon alleges that "[d]efendants *or their customers* registered, trafficked in, or used the Infringing Domain Names." (Id. at ¶ 123) (emphasis added). Verizon claims that Above.com is liable for third parties' actions because Above.com is able to monitor and has control over its services. (Id. at ¶¶ 112-13, 117-18.)

Verizon does not provide any facts indicating that Above.com has ever supplied the privacy or monetization services to a registrant for the purposes of cybersquatting, or with knowledge that a cybersquatter is actively using Above.com's services to cybersquat. Instead, Verizon notes that unidentified cybersquatters have used Above.com's services in the past. (Id. at ¶¶ 114, 119.)

1  Verizon complains that Above.com "continues to supply" privacy and
2  monetization services, despite knowledge that the services have previously been
3  used by unspecified registrants for cybersquatting. (Id. at ¶¶ 116, 120.)

### III.   DISCUSSION

5  FED. R. CIV. P. 12(b)(6) requires the Court to dismiss when it is clear that
6  "no relief could be granted under any set of facts that could be proved consistent
7  with the allegations" present in the complaint. *Winn v. Ariz. Christian Sch. Tuition*
8  *Org.*, 562 F.3d 1002, 1007 (9th Cir. 2009), *rev. on other grounds by Ariz.*
9  *Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 179 L. Ed. 2d 523 (2011).
10 Dismissal is proper where there is either a "lack of a cognizable legal theory" or
11 "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*
12 *v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). A claim must be
13 dismissed where it relies on a cause of action that is not provided by law. *CFTC v.*
14 *White Pine Trust Corp.*, 574 F.3d 1219 (9th Cir. 2009).

**A.    The plain language of the ACPA precludes a claim for contributory
cybersquatting.**

17 The ACPA provides a cause of action for an owner of a distinctive or
18 famous trademark against a person who "(i) has a bad faith intent to profit from
19 that mark . . . and (ii) registers, traffics in, or uses a domain name that . . . is
20 identical or confusingly similar to that mark". 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). In
21 its claim for contributory cybersquatting, Verizon alleges that third parties
22 registered, trafficked in, or used domain names that are confusingly similar to
23 Verizon's trademarks in bad faith. (Complaint at ¶¶ 109-140.) Verizon believes
24 that Above.com should be liable because it failed to stop cybersquatters from using
25 Above.com's services, and that Above.com thus contributed to the third-party
26 wrongdoing.

27 Statutory analysis begins with the plain language of the statute. *Hawaii v.*
28 *Office of Hawaiian Affairs*, 129 S. Ct. 1436, 1443, 173 L.Ed.2d 333 (2009). Where

4

statutory language is clear, there is no need to review legislative history. *See BedRoc, Ltd. v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004) (noting that a court's "inquiry begins with statutory text and ends there as well if the text is unambiguous").

If Congress intended to provide for contributory liability under the ACPA, it would have done so. But the ACPA's plain language limits the sole cause of action to when a person "has a bad faith intent to profit [and] . . . registers, traffics in, or uses a domain name that . . . is identical or confusingly similar" to a registered trademark. 15 U.S.C. § 1125(d)(1)(A)(emphasis added). Indeed, "a person shall be liable for using a domain name . . . *only if* that person is the domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D) (emphasis added). The limitation that Congress imposed—a person is liable "only if" certain conditions are met—is unambiguous. The statute expressly limits liability to a domain-name registrant or its licensee. Under the ACPA's language, contributory liability cannot exist because contributory liability, by definition, is for a person other than the registrant or the registrant's licensee. Thus, the Court should dismiss Verizon's contributory infringement claim because the statute's express language prevents the cause of action.

**B.    The legislative history demonstrates that Congress intended only a direct cause of action.**

Even if the statutory language were ambiguous—which it is not—the relevant legislative history shows that Congress intended the remedies under the ACPA to be "carefully and narrowly tailored," and limited to a cause of action against cybersquatters. S. Rep. No. 106-140 (1999), at 12-13. As one of the ACPA's sponsors noted, "[a]ny legislative solution to cybersquatting must tread carefully to ensure that any remedies do not impede or stifle the free flow of information on the internet." 145 Cong. Rec. S9755 (daily ed. Jul. 29, 1999) (statement of Sen. Patrick Leahy). The legislation is specific, and the legislative

1  history discusses that liability should not extend beyond the statute's reach because
2  otherwise the law could stifle commerce.

3       The ACPA was "carefully and narrowly tailored . . . to extend only to cases
4  where the plaintiff can demonstrate that the defendant registered, trafficked in, or
5  used the offending domain name." S. Rep. No. 106-140 (1999), at 12. Therefore,
6  the only "abusive conduct that is made actionable is appropriately limited just to
7  bad-faith registrations and uses of others' marks by persons who seek to profit
8  unfairly from the goodwill associated therewith." *Id*. at p. 8. The Senate report
9  indicates that the law was not meant to extend beyond those who register or use in
10  bad faith.

11      Congress intended the ACPA to provide narrower relief than the broad
12  sweep of traditional trademark infringement laws. The Lanham Act codified the
13  common law of trademarks and incorporated traditional tort causes of action.
14  *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 861 n.2, 102 S. Ct. 2182, 72 L.
15  Ed. 2d 606 (1982) (White, J. concurring). The fast-emerging world of the Internet
16  simply did not fit traditional standards for infringement. As one senator noted,
17  "attempting to apply established trademark law in the fast-developing world of the
18  Internet is somewhat like trying to board a moving bus[.]" 145 Cong. Rec. S10517
19  (daily ed. Aug. 5, 1999) (statement of Sen. Patrick Leahy), *quoting Bensusan*
20  *Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997).

21      Rather than cram the ACPA onto the moving bus, Congress created a new,
22  limited cause of action. Congress made it clear that traditional trademark remedies
23  remain available as alternate causes of action—but pointedly did not incorporate
24  them into the ACPA. 15 U.S.C. §1125(d)(3).

25      Congress simply did not intend to provide trademark owners with the wide
26  range of common law remedies available under the Lanham Act—including
27  theories of contributory liability based on inducement:

28

In addition, the Senate is considering today an amendment I am offering with Senator Leahy to make three additional clarifications. First, our amendment will clarify that the prohibited "uses" of domain names contemplated by the bill are limited to uses by the domain name registrant or his authorized licensee and do not include uses by others, such as in hypertext links, directory publishing, or search engines.

145 Cong. Rec. S10516 (daily ed. Aug. 5, 1999)(statement of Sen. Orrin Hatch). Above.com's privacy service is part of the directory publishing to which the ACPA was not intended to extend. Like an unlisted telephone number, the only function of the privacy service is to keep the name and contact information of a registrant from public view—although the identity of each registrant can be obtained through legal process. While it is unclear what Verizon intended by "monetization services," any service provided by Above.com that involves placement of hypertext links, advertising, or providing search results on a web page is likewise outside the definition of "use" established by Congress. If Verizon means that Above.com actively used domain names that are identical or confusingly similar to its trademarks, then Verizon's remedy is through its direct cybersquatting cause of action. But if Above.com merely provided search results, links, or advertisements that its customers could make available via an infringing domain name, then Above.com did not violate the statute.

Congress considered and rejected an earlier version of the ACPA that did not require bad faith. The earlier version would have created a civil and criminal cause of action regardless of bad faith intent. 145 Cong. Rec. S9754 (daily ed. Jul. 29, 1999) (statement of Sen. Patrick Leahy). Verizon's contributory liability theory would undermine Congress's intent to only punish those who register or use domain names with bad faith.

Under Verizon's theory of contributory liability, Above.com would be liable even though it is a third party, and even though it does not have bad faith intent. Moreover, to avoid becoming liable under the ACPA, Above.com would have to ascertain its customers' intent concerning every domain name—and make a value

judgment as to whether there was bad faith. Evaluating the registrant's intent for each domain name is impractical because moderate-sized service providers like Above.com deal with hundreds of thousands or even millions of domain names. And such an inquiry would stifle the free flow of information and online commerce because service providers, like Above.com, would have to terminate service for any customer suspected of bad faith. Such an inquiry is better left to a trademark owner who can file an action against a direct infringer and a court who can impose direct liability. But the burden of a "bad faith intent" analysis should not fall on an Internet service provider, and Above.com should not become liable for its customer's intent.

## C.  Contributory trademark infringement differs from Verizon's novel cause of action.

Verizon's novel cause of action is more than just contributory trademark infringement in a new context. The Court should look to whether this is an expansion of traditional trademark law, or whether the ACPA creates a new legal claim. In *MDY Industries, LLC v. Blizzard Entm't, Inc.*, No. 09-15932, 2011 U.S. App. LEXIS 3428 (9th Cir. Feb. 17, 2011), the Ninth Circuit considered whether a portion of the Digital Millennium Copyright Act (DMCA) created a new cause of action outside of copyright infringement, or merely strengthened infringement protections. In finding that the DMCA created a new cause of action, the Ninth Circuit focused on whether the new cause of action protected existing exclusive copyrights, or created new protections. *See id.* at * 29. Because the cause of action was separate from copyright infringement, the Ninth Circuit noted that traditional copyright defenses might not apply. *Id.* at *39-40 n.10.

Similarly, the ACPA's anticybersquatting provisions do not protect traditional trademark rights but rather create new rights. A traditional trademark infringement analysis looks to the likelihood of consumer confusion with regard to a narrow class of goods or services, but without regard to the infringer's intent. 15

8

1   U.S.C. § 1125(a)(1)(A). In contrast, the ACPA applies to the use or registration of

2   a domain name without regard to goods or services, but with regard to the

3   registrant's intent. 15 U.S.C. § 1125(d)(1)(A). Since the analysis is different, the

4   ACPA creates new rights rather than expanding upon traditional rights. And

5   considering the note in *MDY*, traditional trademark remedies—and specifically

6   contributory liability—should not apply.

7        In *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th

8   Cir. 1999), before the ACPA expressly excluded registrars from liability, the Ninth

9   Circuit declined to extend contributory trademark infringement liability to a

10  domain name registrar. The court found that knowing whether a particular name

11  infringed would require a domain name registrar to "monitor the Internet." *Id*.

12  Verizon asks this court to impose the same Internet-wide scrutiny that the Ninth

13  Circuit rejected. If this Court allows contributory liability, then Above.com must

14  monitor the Internet in the same manner that the Ninth Circuit found inappropriate.

15  For the reasons that the Ninth Circuit found contributory trademark infringement

16  should not apply to a registrar, this Court should not create a contributory

17  cybersquatting cause of action against Above.com.

18  **D.      Contributory cybersquatting would make innocent conduct illegal.**

19        If this Court recognizes the contributory claim, legitimate businesses acting

20  in good faith would be swept up in the broad reach of Verizon's novel cause of

21  action. Verizon's complaint already seeks to hold domain name registrars liable if

22  they offer privacy services—and almost every registrar offers the same service.

23  But privacy services are "indisputably legal." *Solid Host, NL v. Namecheap, Inc.*,

24  652 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009). There are innumerable innocent

25  reasons why a customer might wish to avoid publicly registering a domain name.

26  Anonymity is a key feature of the Internet, and the protection of a speaker's

27  identity is a key component in according "meaningful protection for freedom of

28  expression." *Id. at* 1096. A citizen criticizing a repressive government, for

9

1    instance, might wish to keep their identity secret in order to ensure their safety. *Id.*

2    An individual might not want to reveal their personal contact details for fear of

3    harassment when registering a personal website. A consumer critical of a

4    corporation (such as Verizon) might not want to expose themselves publicly.

5    Above.com offers its privacy service as part of its registrar services, and cannot

6    possibly screen every domain name—proposed by a third party wishing

7    anonymity—for whether the name infringes.

8         Verizon seeks to hold Above.com liable for "domain monetization" services,

9    which implies that any business that provides a revenue source to a cybersquatter

10   should be within the scope of liability. But Internet service providers who accept

11   thousands of customers over the Internet cannot review each to determine whether

12   a registrant had good or bad faith. And even if the Court limits the claim to a

13   narrow fact pattern—such as to only when the defendant encouraged

14   cybersquatting—any Internet business that unknowingly provides a service to a

15   cybersquatter is subject to unnecessary litigation because plaintiffs will still

16   attempt to hold service providers liable. If the contributory claim exists, then

17   search engine providers who pay commissions for domain-name traffic, and even

18   receivers seeking to liquidate domain names, would all become fair game for

19   plaintiffs.

20        Verizon asks for a cause of action that would penalize an Internet business

21   for a cybersquatters' use, regardless of whether the business actually knew of the

22   allegedly infringing domain names. (*See* Complaint at ¶¶ 109-140.) These

23   businesses provide the building blocks of Internet commerce and there is no viable

24   means for them to ensure that none of their millions of customers registered or

25   used a domain name in bad faith. Congress wisely chose to require Verizon to

26   prove that Above.com, not third parties, registered, trafficked in, or used a domain

27   name that is confusingly similar to Verizon's marks. Congress did not intend for

28   Above.com and every other domain name-related services provider to be liable for

**MEM. OF P&A IN SUPP. OF DEFS'**
**MOT. FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

third parties' actions without any other involvement than providing entirely legal services.

**E.     This Court should decline to follow nonbinding district courts whose analysis was sparse and inconsistent with the plain language of the ACPA.**

Three district courts have considered contributory cybersquatting. The first court did not hold that the claim exists. In *Ford Motor Co. v. Great Domains.com, Inc.*, 177 F. Supp. 2d 635, 646 (E.D. Mich. 2001), the court found that "because an entity such as Great Domains generally could not be expected to ascertain the good or bad faith intent of its vendors, contributory liability would apply, if at all, in only exceptional circumstances." Having found "no such exceptional circumstances," it dismissed the claim. *Id*. The *Great Domains* court conducted no analysis of the ACPA to determine if a cause of action for contributory cybersquatting existed, noting only that "it is well established that a third party can be held liable for another's infringement of a trademark." *Id.* at 646. For that reason, the *Great Domains* opinion is hardly insightful or relevant to whether the contributory cause of action exists. But even if this Court applies the *Great Domains* standard, the claim should be dismissed against Above.com because, like Great Domains, Above.com could not be expected to ascertain the good or bad faith intent of its customers.

Later cases rely on *Great Domains* without any further substantive analysis of the ACPA. In *Solid Host*, the court denied a motion to dismiss a claim of contributory cybersquatting without carefully evaluating whether the cause of action existed. *Solid Host*, 652 F. Supp. 2d 1092.  Relying on *Great Domains*, the *Solid Host* court applied contributory trademark infringement analysis, adding the element of bad faith found in the ACPA but not in trademark infringement.

In *Microsoft Corp. v. Shah*, 2011 U.S. Dist. LEXIS 2995 (W.D. Wash. Jan. 12, 2011), the Western District of Washington relied on *Great Domains* to find a contributory cybersquatting cause of action. There are key differences between

11

1    Verizon's purported cause of action and *Microsoft*. In *Microsoft*, the court found a

2    cause of action for induced cybersquatting where the defendants allegedly created

3    a series of training videos teaching cybersquatters how to misleadingly use

4    Microsoft's marks. Relying on *Solid Host* and *Great Domains* and leaning heavily

5    on a comparison to contributory trademark infringement outside the context of

6    cybersquatting, the court held that the ACPA included induced cybersquatting, but

7    with an added element that the defendants either knew or should have known that

8    the third parties who used their service "could not have had a legitimate reason for

9    purchasing". *Id.* at *7.

10        In finding this limited cause of action for induced cybersquatting, the

11   *Microsoft* court misconstrued *DSPT International, Inc. v. Nahum,* 624 F.3d 1213

12   (9th Cir. 2010) to conclude that the ACPA should be broadly interpreted. In *DSPT*

13   *International*, the Ninth Circuit held that a former employee who misappropriated

14   a domain name after leaving employment was liable for cybersquatting. The Ninth

15   Circuit noted that although the "paradigmatic harm that the ACPA was enacted to

16   eradicate is the practice of cybersquatters registering hundreds of domain names …

17   the statute is written more broadly than what may have been the political catalyst

18   that got it passed." *Id.* at 1219. The holding in *DSPT International* relied on the

19   statute's plain language, and not a broad reading of the ACPA. The Ninth Circuit's

20   comment merely noted that the statutory language covered more than one method

21   of cybersquatting. *DSPT International* approved a direct cybersquatting claim, but

22   did not expand the law or authorize courts to read the ACPA more broadly than

23   provided by statute. While the *Microsoft* court significantly limited the reach of a

24   contributory claim—and under its standard Above.com would be immune from

25   liability—the court simply did not have the authority to expand the ACPA even in

26   a narrow direction.

27        Here, unlike the allegations in *Microsoft*, Verizon does not claim that

28   Above.com induced anyone to act and does not claim that Above.com knew its

**MEM. OF P&A IN SUPP. OF DEFS'**
**MOT. FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1  customers' intent. Rather, Verizon claims that Above.com contributed to

2  cybersquatting simply by providing services that were used by alleged

3  cybersquatters. Verizon's cause of action would mandate Above.com and other

4  registrars to police customers who use entirely legal services. Verizon asks this

5  Court to go much farther than the *Microsoft* court. So even if the Court follows

6  *Microsoft* and allows a contributory claim—which it should not—the claim alleged

7  in Verizon's complaint should still be dismissed.

8
9  **F.     This Court should not create a new cause of action for contributory
        cybersquatting because adequate alternative remedies exist.**

10         Verizon's alleged harms can be redressed under theories of direct

11  cybersquatting liability and there is no reason to create a new cause of action. The

12  availability of a superior alternative remedy is "a convincing reason for the Judicial

13  Branch to refrain from providing a new, freestanding damages remedy." *Pollard v.*

14  *GEO Group, Inc.*, 629 F.3d 843, 871 (9th Cir. 2010) (Restani, J. concurring in part

15  and dissenting in part). Courts are reluctant to recognize new causes of action

16  which are implied without any Congressional authority, because "a decision to

17  create a private right of action is one better left to legislative judgment in the great

18  majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727, 124 S. Ct. 2739,

19  159 L. Ed. 2d 718 *(2004)*. "So long as the plaintiff has an avenue for some redress,

20  bedrock principles of separation of powers foreclose judicial imposition of a new

21  substantive liability." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69, 122 S. Ct.

22  515, 151 L. Ed. 2d 456 (2001).

23         Verizon alleges that the Defendants directly cybersquatted by acting as each

24  other's "agent, servant, employee, partner, alter ego, subsidiary, or joint venture"

25  in a scheme to register and use misleading domain names. Complaint at ¶ 47.

26  Verizon has a remedy against Above.com if it can prove these facts. There is

27  simply no reason to create a new cause of action for contributory cybersquatting,

28  given the availability of alternate remedies for the conduct that Verizon complains

1   about.

2   ### IV.   CONCLUSION

3   Verizon has legitimate concerns about cybersquatting. It has sued numerous

4   defendants over the years, and many of them made tenuous arguments to avoid

5   liability. Unlike other defendants before them, Trellian and Above.com are not

6   evading process or making hyper-technical arguments in an attempt to escape

7   liability. But Above.com should not be liable for the use or registration of domain

8   names by third-party cybersquatters who use its services. To allow a contributory

9   cybersquatting cause of action would require Above.com to get into the minds of

10  all of its tens of thousands of customers to determine their good or bad faith, and

11  impose a substantial burden on all Internet service providers. Congress did not

12  intend for such broad interpretation of the ACPA, and consequently provided a

13  clear and limited prohibition "only if" a defendant was responsible for the direct

14  registration, use, or trafficking of a domain name in bad faith.

15  Verizon has remedies available under other theories of liability, and there is

16  no reason or authority for this Court to create a new cause of action. Above.com

17  respectfully requests that the Court grant this Motion and dismiss Verizon's claim

18  for contributory cybersquatting against all defendants for failure to state a claim.

19  Dated this 23rd day of May 2011.

20

21  Respectfully Submitted,

22

23  s/ Derek Newman

24  Derek A. Newman, State Bar No. 190467
    derek@newmanlaw.com
    John Du Wors, State Bar No. 233913

25  duwors@newmanlaw.com

26  Attorneys for Defendants
    ABOVE.COM PTY LTD, TRELLIAN

27  LIMITED, TRELLIAN LLC,
    and DAVID and RENE WARMUZ

28