1  **DAVID J. STEELE, CA Bar No. 209797**
    **Email:  djslit@cph.com**
2  **CHRISTIE, PARKER & HALE, LLP**
    **18101 Von Karman Ave., Suite 1950**
3  **Irvine, CA 92612-0163**
    **Telephone: (949) 476-0757**
4  **Facsimile:  (949) 476-8640**

5  **HOWARD A. KROLL, CA Bar No. 100981**
    **Email:  howard.kroll@cph.com**
6  **CHRISTIE, PARKER & HALE, LLP**
    **350 W. Colorado Boulevard, Suite 500**
7  **Pasadena, CA  91105**
    **Telephone: (626) 795-9900**
8  **Facsimile:  (626) 577-8800**

9  Attorneys for Plaintiffs
    VERIZON CALIFORNIA INC.
10 VERIZON TRADEMARK SERVICES LLC
    VERIZON LICENSING COMPANY,

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15

16 VERIZON CALIFORNIA INC.;        Case No. CV 11-00973 ABC (CWx)
    VERIZON TRADEMARK
    SERVICES LLC; and VERIZON
17 LICENSING COMPANY,              **APPENDIX OF NON-REPORTED**
                                    **MATERIALS CITED IN**
18           Plaintiffs,           **PLAINTIFF'S MEMORANDUM**
                                    **OF POINTS AND AUTHORITIES**
19      vs.                        **IN OPPOSITION TO MOTION**
                                    **OF DEFENDANTS ABOVE.COM**
20 ABOVE.COM PTY LTD; TRELLIAN     **PTY LTD, TRELLIAN LIMITED,**
    LIMITED; TRELLIAN LLC; DAVID    **TRELLIAN LLC, AND DAVID**
21 WARMUZ; RENE WARMUZ a/k/a       **AND RENE WARMUZ FOR**
    REN WARMUZ; and DOES 1-10,      **PARTIAL DISMISSAL UNDER**
22                                  **FED. R. CIV. P. 12(b)(6)**
            Defendants.
23
                                    **Date:    July 18, 2011**
24                                  **Time:    10:00 a.m.**
                                    **Ctrm:    680**
25
                                    **Hon. Audrey B. Collins**
26

27

28

CHRISTIE, PARKER & HALE, LLP

-1-

1    Plaintiffs Verizon California Inc., Verizon Trademark Services LLC, and
2   Verizon Licensing Company submit the following non-reported materials cited in
3   their Memorandum of Points and Authorities in support of their opposition to
4   Defendants' Motion for Partial Dismissal Under Fed. R. Civ. P. 12(b)(6):

5

6   **Title**                                                        **Exhibit No.**

7

8   *Callmann on Unfair Competition, Trademarks and Monopolies*
9   (4th ed., upd. 2010), § 5:2........................................................................1

10

11  List of Administrative Decisions rendered against Defendants'
12  privacy service pursuant to the Uniform Domain Name Dispute
13  Resolution Policy (UDRP) ......................................................................2

14

15  *Association des Centres Distributeurs E.Leclerc - A.C.D Lec v. Ho Nim /*
16  *Above.com Domain Privacy*, D2011-0070, (WIPO Mar. 14, 2011)
17  (Admn. proceeding regarding www-*leclerc*.com) ...................................3

18

19  Dated:  June 27, 2011                   Respectfully submitted,
20                                          CHRISTIE, PARKER & HALE, LLP

21
                                           By   /s/David J. Steele
22                                              David J. Steele
                                                Howard A. Kroll
23
                                           Attorneys for Plaintiffs
24                                         VERIZON CALIFORNIA INC.
                                           VERIZON TRADEMARK SERVICES LLC
25                                         VERIZON LICENSING COMPANY

26  LLB PAS1125419.1-*-06/27/11 8:16 PM

27

28

CHRISTIE, PARKER & HALE, LLP

# Exhibit 1



Callmann on Unfair Competition, Trademarks and Monopolies (4th Edition)
Current through April 2011

Louis Altman and Malla Pollack

Part
II. Unfair Advertising and Pricing
Chapter
5. False and Misleading Advertising
A. False Advertising in the Law[*]

### § 5:2. The parties—The common law[1]

No one would seriously defend the resort to false representations in advertising. It is apparent that the consumer is deceived, and in many instances endangered, by false advertising. Yet the equity courts, which readily granted relief against misrepresentations concerning trade identity[2] and geographical source,[3] did not do so against other types of false advertising claims. Part of the reason for this failure appears to be that some judges may have been seduced by the cliche that unfair competition is synonymous with "passing off" by misrepresenting trade identity.[4]

Accordingly, the need for a clear-cut theory of unfair competition is particularly manifest in the area of false and misleading advertising. Before federal legislation intervened,[5] the courts had not evolved a concept of unfair competition consistent with the understanding of the honest tradesman.[6] Until then, the judiciary was content to abdicate its function in this area, and the old cases which supported this comment made sad reading indeed.

In the 1890 case of New York & R. Cement Co. v. Coplay Cement Co.,[7] the plaintiff was one of several cement manufacturers located at Rosendale, N.Y., who marketed their products under the name of "Rosendale Cement." The defendant manufactured cement elsewhere, but sold it as Rosendale cement. The court applied the single-source rule strictly to reject the plaintiff's claim of unfair competition, noting that the plaintiff was "only one of the many who manufacture cement at Rosendale" and adding that:

The principle for which [counsel for the complainants] contends would enable any crockery merchant of Dresden or elsewhere, interested in the particular trade, to sue a dealer of New York or Philadelphia who should sell an article as Dresden china, when it is not Dresden china. It seems to us that this would open a Pandora's box of vexatious litigation. A drygoods merchant, selling an article of linen as Irish linen, could be sued by all the hab-erdashers of Ireland, and all the linen dealers of the United States.

The reasoning of the Cement case, supra, was adopted ten years later by Am. Washboard Co. v. Saginaw Mfg. Co.[8] which has attained the status of a landmark case. There the sole manufacturer of aluminum washboards sought to enjoin the false representation that a competing zinc washboard was made of aluminum. A distinguished federal appellate court (Judges Taft, Lurton and Day) held that, absent trade identity confusion, such a misrepresentation could not be restrained. The court said:

… we do not find it anywhere averred that the defendant, by means of its imitation of complainant's trademark, is palming off its goods on the public as and for the goods of complainant. The bill is not predicated upon that theory…. [T]he theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a

Exhibit 1
Page 3

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:11-cv-00973-ABC -CW   Document 25-1   Filed 06/27/11   Page 5 of 25   Page ID #:330

CALLMANN § 5:2                                                                    Page 2
1A Callmann on Unfair Comp., Tr. & Mono. § 5:2 (4th Ed.)

right to enjoin others from branding any board 'Aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises.

Conceding that it was "doubtless morally wrong and improper to impose upon the public by the sale of spurious goods," the court nonetheless held that a private right of action does not lie if no property right of the plaintiff has been invaded. It also said that "There are many wrongs which can only be righted through public prosecution, and for which the legislature, and not the courts, must provide a remedy. Courts of equity, in granting relief by injunction are concerned with the property rights of complainant." The court, however, failed to recognize that an action for unfair competition is not properly predicated upon a violation of the plaintiff's property right, but upon the defendant's failure to conform to an affirmative code of ethics arising out of the competitive relationship.[9]

Earlier decisions protecting geographical names against misleading use by those who had no valid connection with the relevant area[10] were distinguished by the American Washboard court on the dubious premise that they were based upon the doctrine of passing off. However, that doctrine, as established in trademark cases, refers to passing off one's goods as those of another so as to create confusion concerning the *identity* of the source or sponsor of the defendant's goods or services;[11] whereas false advertising involves misrepresentation of the *nature or qualities* of those goods or services, which is quite a different harm.

The American Washboard court neglected the opportunity to use the single-source doctrine to distinguish the Cement Co. case, supra, on the ground that plaintiff in American Washboard was the sole manufacturer of aluminum washboards, whereas there had been many cement manufacturers located in Rosendale, N.Y. Sounder reasoning was displayed by Learned Hand in Ely-Norris Safe Co. v. Mosler Safe Co.[12] There Judge Hand pointed out that it did not appear that the plaintiffs were the only persons making cement at Rosendale, and that "[t]here was no reason, therefore, to assume that a customer of the defendant, deceived as to the place of origin of the defendant's cement, and desiring to buy only such cement, would have bought of the plaintiffs. It resulted that the plaintiffs did not show any necessary loss of trade through the defendant's fraud upon its own customers." He then pointed out that the American Washboard case was thus to be distinguished, for there the plaintiff had a monopoly of aluminum for the washboards in question, and it was "a fair inference" that any customer of the defendant, deceived by the latter, was a presumptive customer of the plaintiff.

Further, he stated the issue as follows: "While a competitor may, generally speaking, take away all the customers of another that he can, there are means which he must not use. One of these is deceit. The false use of another's name as maker or source of his own goods is deceit, of which the false use of geographical or descriptive terms is only one example. But we conceive that in the end the questions which arise are always two: Has the plaintiff in fact lost customers? And has he lost them by means which the law forbids? The false use of the plaintiff's name is only an instance in which each element is clearly shown." Finding that the plaintiff had alleged a monopoly from which the inference of loss of customers followed, he held for the plaintiff.

In this case the plaintiff manufactured, under patent, a safe which had, as its distinctive feature, an explosion chamber to protect against safe-cracking. The plaintiff had popularized the value of this invention and built up a valuable trade. The defendant manufactured and sold a safe which did not, in fact, contain an explosion chamber. A metal band, similar to that which appeared on the plaintiff's safe was, however, used by the defendant to decorate its safe, and it was falsely represented as covering and closing an explosion chamber.

Judge Hand also pointed out that this reasoning should also have applied to the American Washboard case, where "Plaintiff alleged that it had acquired the entire output of sheet aluminum suitable for washboards. It necessarily

Exhibit 1
Page 4

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

followed that the plaintiff had a practical monopoly of this metal for the articles in question, and from this it was a fair inference that any customer of the defendant, who was deceived into buying as an aluminum washboard one which was not such, was a presumptive customer of the plaintiff, who had therefore lost a bargain."[13]

He further observed that "The reason, as we think, why such deceits have not been regarded as actionable by a competitor, depends only upon his inability to show any injury for which there is a known remedy. In an open market it is generally impossible to prove that a customer, whom the defendant has secured by falsely describing his goods, would have bought of the plaintiff, if the defendant had been truthful. Without that, the plaintiff, though aggrieved in company with other honest traders, cannot show any ascertainable loss. He may not recover at law, and the equitable remedy is concurrent. The law does not allow him to sue as a vicarious avenger of the defendant's customers."

But Judge Hand's decision was reversed by the U.S. Supreme Court[14] on the ground that no exclusive right to the safe had been shown by the plaintiff. As noted, the plaintiff had predicated its claim to being the sole source on its patent on an explosion chamber for the safe. But Justice Holmes' opinion for the Supreme Court stated that it was consistent with every allegation in the bill that there were other safes with explosion chambers besides that for which the plaintiff had a patent. Hence there appeared nothing to prevent the defendant from making a representation that its safes also had an explosion chamber if the representation was true. Justice Holmes further noted that "If on the other hand the representation was false as it is alleged sometimes to have been, there is nothing to show that customers had they known the facts would have gone to the plaintiff rather than to other competitors in the market, or to lay a foundation for the claim for a loss of sales."

This basis for reversal did leave open the possibility that a plaintiff could still prevail on a common law cause of action by showing that he or she was indeed the sole source of the relevant product or service, and thus was uniquely harmed by the defendant's false advertising. However, a true sole source situation is sufficiently rare that these holdings are applicable only to a narrow class of cases.

And a plaintiff who is not the sole source of a product or service is rarely in a position to allege and prove that he in particular will suffer immediate injury because one of his many competitors pursues an advertising campaign avowedly designed to deceive the public. There is no readily discernible nexus between deception by one and damage to another, as there is where the injury is to the plaintiff's name or trademark, unless the plaintiff was, as in the Washboard case, and as Judge Hand assumed in the Ely-Norris case, in a monopolistic position. But even if the plaintiff cannot prove the extent of his damages, the fact that he sustained some injury should be clear (providing he and the defendant are competitors).[15]

In addition, the courts have not been alert to the danger that deceptive conduct by one member of the trade may tend to discredit all others. Thus, even if the plaintiff is not the sole manufacturer, and therefore cannot prove an inevitable diversion of trade, it could still be held that his goodwill had been damaged. As Professor Handler so ably stated, "a campaign of false advertising may completely discredit the product of an industry, destroy the confidence of consumers and impair a communal or trade good will. Less tangible but nevertheless real is the injury suffered by the honest dealer who finds it necessary to meet the price competition of inferior goods, glamorously misdescribed by the unscrupulous trader. The competition of a liar is always dangerous even though the exact injury may not be susceptible of precise proof."[16]

Thus the courts in the Cement and American Washboard cases were apprehensive about hampering free enterprise because, as one judge later said, "the vista of business censorship seen through such an opening is limitless."[17] But it is arguable that such a view is counter-productive because it courts destruction of the market and thus invites government regulation.[18] In more recent times, instead of being loathe to restrict advertising, the law has sometimes been hostile to it.[19] But even if such hostility should be justified, that would be no reason for refusing to give relief for false advertising. If *all* advertising is bad, then a fortiori *false* advertising is even worse.

Exhibit 1
Page 5

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The courts in these cases also feared that a judicial willingness to grant relief in false advertising cases might stimulate excessive litigation and unduly tax the economic expertise of the court, especially in cases involving an entire industry.[20] This, however, is a woeful confession of incompetence. Some knowledge of economics is required in many other fields, to mention only the antitrust laws and public utility rate control.

One would have supposed that nearly five decades of development of the law of unfair competition, increasing awareness of the modern importance of commercial advertisement, and the barbed criticism of the American Washboard case by commentators[21] would have had some ameliorating influence upon the attitude of the courts. But in California Apparel Creators v. Wieder of California, Inc.,[22] the Court of Appeals for the Second Circuit, out of an abundance of respect for precedent, applied the American Washboard doctrine. In that case, a trade association of California garment manufacturers and dealers, and 75 of its members, sought an injunction against the use of "California Sportswear" as a brand name for garments manufactured in New York. The plaintiffs insisted that the word "California" in connection with sportswear had become eponymous, that California-made wearing apparel was generally superior in quality and design to similar apparel manufactured in other sections of the country, and that California apparel manufacturers had, at great expense, advertised their wares and thereby succeeded in impressing these facts upon the buying public. Conceding that the case presented "an interesting and an important issue," the court held that "plaintiffs must … show not only a representation by defendants which is false and deceitful in the sense of luring customers to their doors wrongfully, but also that plaintiffs have lost their own rightful custom thereby." This insistence upon proof of actual diversion of trade traces its heritage to the American Washboard case. Not even injunctive relief was available.

Apart from special legislation,[23] these decisions, remain the weight of authority.[24] As a result, private false advertising litigation has shifted almost entirely toward § 43(a) of the Lanham Act.[25]

[FN*] Callmann, False Advertising as a Competitive Tort, 48 Colum. L. Rev. 876, 38 Trademark Rep. (Bull) 1048 (1948); Dyer, False and Misleading Advertising, 41 Trademark Rep. 9 (1951); Simon, The Law for Advertising and Marketing (1956); note on regulation of advertising, 56 Colum. L. Rev. 1018 (1956); Reynolds, Legal Curbs on Advertising, 50 Trademark Rep. 394 (1960); Kyle, Deceptive Advertising Practices, 39 Tex. L. Rev. 903 (1961); Note, Unfair Competition and Penal Violations, 15 Western Res. L. Rev. 133, 158 (1963); Developments in the Law—Competitive Torts, False Advertising, 77 Harv. L. Rev. 888, 905 (1964); report on "Self Regulation in Advertising" by the Advertising Advisory Committee to the Secretary of Commerce, U.S. Department of Commerce (1964); Alexander, Honesty and Competition: Some Competitive Virtues in the False Naming of Goods, 39 S. Cal. L. Rev. 1 (1966); Developments in the Law—Deceptive Advertising, 80 Harv. L. Rev. 1005 (1967); Jones, To Tell the Truth, the Whole Truth, 26 Food Drug Cosm. L.J. 173 (1971); Grimes, Control of Advertising in the United States and Germany, 84 Harv. L. Rev. 1769 (1971); Torem and Goldstein, Denigration and Disparagement—A Franco-American Comparative Analysis, 7 Tex. Int. L.R. 203 (1971); Trebilcock, Private Law Remedies for Misleading Advertising, 22 Toronto L.J. 1 (1972); Bartlett, Truth in Advertising—The Whole Truth, 89 Banking L.J. 998 (1972); Rosden and Rosden, The Law of Advertising (Matthew Bender 1973); Enforcing California's False Advertising Law, 25 Hastings L.J. 1105 (1974); Thompson, Government Regulation of Advertising: Killing the Consumer in Order 'To Save' Him, 8 Antitrust L. & Econ. Rev. 81 (1976); Lunsford, Protection from False and Misleading Advertising, 35 Fed. B.J. 106 (1976); Pitofsky, Beyond Nader: Consumer Protection and the Regulation of Advertising, 90 Harv. L. Rev. 661 (1977); Reed and Coalson, FTC Regulation of Emotionally Conditioning Advertising, 11 Ga. L. Rev. 733 (1977); Note, Fairness and Unfairness in Television Product Advertising, 76 Mich. L. Rev. 498 (1978) (critical of FTC unwillingness to take action against subliminal deceptions of First Amendment concerns); Jordan and Rubin, Economic Analysis of the Law of False Advertising, 8 J. Legal Studies 527 (1979); Schuman, False Advertising: A Discussion of a Competitor's Rights and Remedies, 15 Loy. U. Chi. L.J. 1 (1983); Best, Controlling False Advertising: A Comparative Study of Public Regulation, Industry Self-Policing, and Private Litigation, 20 Ga. L. Rev. 1 (1985); Keating, Damages Standards for False Advertising Under the Lanham Act: A New Trend Emerges, 20 Rutgers L.J. 125 (1988); Plevan and Siroky, Advertising Compliance Handbook (Practising Law Institute,

Exhibit 1
Page 6

Case 2:11-cv-00973-ABC -CW   Document 25-1   Filed 06/27/11   Page 8 of 25   Page ID #:333

CALLMANN § 5:2                                                                                          Page 5
1A Callmann on Unfair Comp., Tr. & Mono. § 5:2 (4th Ed.)

2d Ed. 1991); Note on regulation or prohibition of advertising by aircraft, 41 A.L.R. 2d 1314; Arden, Arden and Long, Advertising Law: Developments and Trends (CCH, Annual); Edelstein, Self-Regulation of Advertising: An Alternative to Litigation and Government Action, 43 IDEA 509 (2003); Council of Better Business Bureaus, Do's and Don'ts in Advertising (CCH 2005).

Under some circumstances a defendant's refusal to publish another company's advertising can amount to monopolization in violation of the Sherman Act. See Lorain Journal Co. v. U.S., 342 U.S. 143, 72 S. Ct. 181, 96 L. Ed. 162, 1 Media L. Rep. (BNA) 2697 (1951). See also §§ 4:21, 10:3.

But it has also been held that when such a refusal is motivated by a legitimate concern that the advertising is deceptive or misleading, it is not an antitrust violation, at least in the absence of any adverse impact on competition. Homefinder's of America, Inc. v. Providence Journal Co., 471 F. Supp. 416, 5 Media L. Rep. (BNA) 1255 (D.R.I. 1979), judgment aff'd, 621 F.2d 441, 6 Media L. Rep. (BNA) 1018 (1st Cir. 1980). Rose and Freeman, Advertising Law Guide (CCH 2000)

[FN1] In order to be tortious under the common law, advertising must be false; unfairness is not enough. Coors Brewing Co. v. Anheuser-Busch Companies, Inc., 802 F. Supp. 965, 26 U.S.P.Q.2d (BNA) 1117, 1124, 1994-1 Trade Cas. (CCH) ¶70556 (S.D. N.Y. 1992) (New York law).

---

[FN2] See Ch 17–22.

[FN3] Pillsbury-Washburn Flour-Mills Co. v. Eagle, 86 F. 608 (C.C.A. 7th Cir. 1898) ("Minneapolis" as applied to flour), and cases cited therein.

[FN4] See American Philatelic Soc. v. Claibourne, 3 Cal. 2d 689, 46 P.2d 135 (1935). Comments: 34 Mich. L. Rev. 296 (1935); 84 U. Pa. L. Rev. 428 (1936); 24 Cal. L. Rev. 340 (1936); 9 So. Cal. L. Rev. 407 (1936). There the plaintiffs, stamp collectors and dealers, were successful in an action for unfair competition against a defendant who sold dealers imitations of rare stamps, even though the dealers themselves were not deceived. The plaintiffs cogently argued that the defendant furnished unscrupulous dealers with the means of defrauding the ultimate buyer. Although this case clearly involved a misrepresentation of quality and genuineness, the California court later referred to it as a "passing off" case; see International Ass'n of Cleaning and Dye House Workers v. Landowitz, 20 Cal. 2d 418, 126 P.2d 609 (1942).

[FN5] See § 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) (1946), discussed in § 2:7.

[FN6] See Part A of Ch 2.

[FN7] New York & R Cement Co v. Coplay Cement Co, 44 F. 277 (C.C.E.D. Pa. 1890).

[FN8] American Washboard Co. v. Saginaw Mfg. Co., 103 F. 281 (C.C.A. 6th Cir. 1900).

[FN9] See § 1:14.

The American Washboard decision has been criticized as "naive." Grismore, Are Unfair Methods of Competition Actionable at the Suit of a Competitor? 33 Mich. L. Rev. 321, 325, note 9 (1935).

[FN10] Pillsbury-Washburn Flour-Mills Co. v. Eagle, 86 F. 608 (C.C.A. 7th Cir. 1898) ("Minneapolis" as

Exhibit 1
Page 7

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

applied to flour), and cases cited therein.

[FN11] See Chs 17 through 22.

See also Handler's leading article, False and Misleading Advertising, 39 Yale L.J. 22, 37, 38 (1929).

[FN12] Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.2d 603 (C.C.A. 2d Cir. 1925), rev'd, 273 U.S. 132, 47 S. Ct. 314, 71 L. Ed. 578 (1927).

[FN13] Judge Hand's reasoning was subsequently adopted in Electronics Corp. of America v. Honeywell, Inc., 428 F.2d 191, 165 U.S.P.Q. (BNA) 674 (1st Cir. 1970): "Owners of worn-out Fireye programmers have nowhere to turn except to the plaintiff or the defendant. Material misrepresentations in defendant's advertising will damage the plaintiff, whether or not there is passing off or express disparagement. We hold them actionable."

[FN14] Mosler Safe Co. v. Ely-Norris Safe Co., 273 U.S. 132, 47 S. Ct. 314, 71 L. Ed. 578 (1927).

Followed in Chamberlain v. Columbia Pictures Corp., 186 F.2d 923, 89 U.S.P.Q. (BNA) 7 (9th Cir. 1951) (no recovery under § 43(a) of the Lanham Act without passing off).

[FN15] See Ortho Pharmaceutical Corp. v. Cosprophar, Inc., 32 F.3d 690 (2d Cir. 1994) (plaintiff has no standing to seek relief for false advertising where defendant's over-the-counter cosmetics do not compete with plaintiff's prescription drugs).

[FN16] Unfair Competition, 21 Iowa L. Rev. 175, 193 (1936).

[FN17] L.B. Silver Co. v. Federal Trade Commission of America, 289 F. 985, 992, 1 Ohio L. Abs. 795 (C.C.A. 6th Cir. 1923) (dissenting opinion).

The same attitude was again evident when courts attempted to rationalize their reluctance to follow the doctrine of International News Service v. Associated Press, 248 U.S. 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A.L.R. 293 (1918). See § 15:3.

[FN18] See 1 Lyon, Watkins and Abramson, Government and Economic Life 311 (1939); cf. Miller, Unfair Competition 114–117 (1941).

[FN19] See, for example, F. T. C. v. Procter & Gamble Co., 386 U.S. 568, 87 S. Ct. 1224, 18 L. Ed. 2d 303 (1967), Harlan's concurring opinion, describing the F.T.C.'s view:

The Commission … seemed to accept the idea that economies could be used to defend a merger…. But advertising economies were placed in a different classification since they were said 'only to increase the barriers to new entry' and to be 'offensive to at least the spirit, if not the letter, of the antitrust laws.' … Advertising was thought to benefit only the seller by entrenching his market position, and to be of no use to the consumer.

Justice Harlan then went on to refute that view. His refutation of the F.T.C. position is based on the premise that "advertising serves a legitimate and important purpose in the market by educating the consumer as to available alternatives." That premise falls, of course, if the advertising is not truthful. In the course of his refutation, however, Justice Harlan did concede that "advertising may sometimes be used to create irrational brand preferences and mislead consumers as to the actual differences between products…."

Exhibit 1
Page 8

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:11-cv-00973-ABC -CW   Document 25-1   Filed 06/27/11   Page 10 of 25   Page ID
#:335

CALLMANN § 5:2                                                                                          Page 7
1A Callmann on Unfair Comp., Tr. & Mono. § 5:2 (4th Ed.)

[FN20] Chafee, Unfair Competition, 53 Harv. L. Rev. 1289, 1317, 1320–1321 (1940).

[FN21] See Handler, False and Misleading Advertising, 39 Yale L.J. 22, 34–37 (1929); Grismore, Are Unfair Methods of Competition Actionable at the Suit of a Competitor? 33 Mich. L. Rev. 321, 325, note 9 (1935); Derenberg, Trade Mark Protection and Unfair Competition 81 (1936); Schnitzer, The Advertiser and the Courts, 29 LAB Bull. 368 (1954).

[FN22] California Apparel Creators v. Wieder of Cal., 162 F.2d 893, 74 U.S.P.Q. (BNA) 221, 174 A.L.R. 481 (C.C.A. 2d Cir. 1947). Notes: 36 Ill. B.J. 90 (1947); 48 Colum. L. Rev. 158 (1948); 28 B.U. L. Rev. 80 (1948); 26 Tex. L. Rev. 355 (1948).

Even though this case was decided after the adoption of the Lanham Act of 1946, the decision was not governed by § 43(a) of that Act. In footnote 12 of its opinion the court said that § 43(a) "is not applicable here, since the Act did not become effective until July 5, 1947, after the argument of this appeal, and does not apply to pending cases, Sec. 46(a), set forth in note to 15 U.S.C.A. § 1051."

Cf. Electronics Corp. of America v. Honeywell, Inc., 428 F.2d 191, 165 U.S.P.Q. (BNA) 674 (1st Cir. 1970) (finding liability for false advertising where plaintiff and defendant were the only sources for replacement parts for plaintiff's equipment).

[FN23] See §§ 5:3- 5:6.

[FN24] Under the common law, "… in an action for false advertising, a plaintiff, in order to have standing to sue, must demonstrate that defendant has either palmed off his goods as those of the plaintiff or that the plaintiff has a monopoly of the goods involved, so that injury can be readily inferred." Smith-Victor Corp. v. Sylvania Elec. Products, Inc., 242 F. Supp. 302, 146 U.S.P.Q. (BNA) 701 (N.D. Ill. 1965); followed in Julie Research Laboratories, Inc. v. General Resistance, Inc., 25 A.D.2d 634, 635, 268 N.Y.S.2d 187 (1st Dep't 1966), order aff'd, 19 N.Y.2d 906, 281 N.Y.S.2d 96, 227 N.E.2d 892 (1967); followed in Magnus Organ Corp. v. Robbins Music Corp., 163 U.S.P.Q. (BNA) 695, 1969 WL 9625 (N.Y. Sup 1969): "While it may be morally wrong and improper to impose upon the public by the sale of spurious goods, false advertising does not give rise to a private right of action, unless some property right of the plaintiff has thereby been invaded."

Nordictrack, Inc. v. Soloflex, Inc., 31 U.S.P.Q.2d (BNA) 1732, 1734, 1994 WL 635123 (D. Or. 1994): "to prevail under Minnesota [common] law, [plaintiff] must establish that it lost sales through [defendant's] false advertising."

Multi-Tech Systems, Inc. v. Hayes Microcomputer Products, Inc., 800 F. Supp. 825, 848 (D. Minn. 1992).

Ortho Pharmaceutical Corp. v. Cosprophar, Inc., 32 F.3d 690 (2d Cir. 1994) (no standing to sue for false advertising without a showing of harm to the plaintiff).

Mueller Co. v. U.S. Pipe & Foundry Co., 351 F. Supp. 2d 1 (D.N.H. 2005).

Florczak v. Oberriter, 857 N.Y.S.2d 308 (N.Y. App. Div. 2008) (affirming summary judgment for defendant; plaintiff has not shown any effect on his own sales; New York common-law; alternative holding).

But cf. Motor Improvements v. A.C. Spark Plug Co., 80 F.2d 385, 28 U.S.P.Q. (BNA) 40 (C.C.A. 6th Cir. 1935). An earlier suit had held that the defendant's automobile oil filter infringed certain patents owned by the plaintiff. Accordingly, the defendant changed to a non-infringing filtering element; he continued, how-

Exhibit 1
Page 9

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ever, his use of a sealed container which was identical with the old one, except for a change in serial number. The court recognized that the defendant, after having invaded the plaintiff's patent rights for many months by selling an infringing device, "now that it can no longer do so, … is selling a spurious device upon the reputation and good will which it wrongfully built up for the infringing one. Deception of the public and injury to the [plaintiff] are quite as definite and certain as they would be had the [defendant] continued to sell the infringing article."

But cf. also Electronics Corp. of America v. Honeywell, Inc., 428 F.2d 191, 165 U.S.P.Q. (BNA) 674 (1st Cir. 1970): "Owners of worn-out Fireye programmers have nowhere to turn except to the plaintiff or the defendant. Material misrepresentations in defendant's advertising will damage the plaintiff, whether or not there is passing off or express disparagement. We hold them actionable."

But cf. also Clairol Inc. v. Save-Way Industries, Inc., 210 U.S.P.Q. (BNA) 459, 1980 WL 30222 (S.D. Fla. 1980), opinion amended, 211 U.S.P.Q. (BNA) 495, 214 U.S.P.Q. (BNA) 270, 1980 WL 30310 (S.D. Fla. 1980) (defendant's sale of a skin-moisturizing appliance which had no lotion dispensing well, with packaging which depicted such a feature, was false advertising and a violation of § 43(a) of the Lanham Act as well as the common law, for which an injunction may issue).

[FN25] Concerning which, see §§ 2:7- 2:9 and 5:5.

Westlaw. © 2011 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

CALLMANN § 5:2

END OF DOCUMENT

Exhibit 1
Page 10

Exhibit 2

*Wolters Kluwer U.S. Corporation v. Transure Enterprise Ltd*, D2008-0384, (WIPO Apr. 24, 2008) (Admn. proceeding regarding wolterkluwer.com).

*F. Hoffmann-La Roche AG v. Transure Enterprise Ltd.*, D2008-0422, (WIPO May 26, 2008) (Admn. proceeding regarding wwwroche.com).

*Eldorado Stone Operations LLC v. Transure Enterprise Ltd.*, D2008-0684, (WIPO Feb. 7, 2008) (Admn. proceeding regarding eldoradoradostone.com).

*Hoffmann-La Roche Inc v. Transure Enterprise Ltd., Host Master*, D2008-0938, (WIPO Aug. 13, 2008) (Admn. proceeding regarding tamilfu.com).

*OSRAM GmbH v. Transure Enterprise Ltd.*, D2008-1032, (WIPO Oct. 21, 2008) (Admn. proceeding regarding osramonline.com).

*International Organization for Standardization ISO v. Transure Enterprise Ltd, Host Master*, D2008-1184, (WIPO Sep. 18, 2008) (Admn. proceeding regarding iso-org.com).

*Wagamama Limited v. Transure Enterprise Ltd.*, D2008-1200, (WIPO Sep. 20, 2008) (Admn. proceeding regarding waggamama.com).

*Koninklijke Luchtvaart Maatschappij Société Air France v. Transure Enterprise Ltd, Host Master*, D2008-1304, (WIPO Nov. 20, 2008) (Admn. proceeding regarding flyinblue-online.com et al.).

*Sanofi-aventis v. Transure Enterprise Ltd*, D2008-1636, (WIPO Dec. 22, 2008) (Admn. proceeding regarding sanofiavents.com et al.).

*Intesa Sanpaolo S.p.A. v. Transure Enterprise Ltd, Host Master*, D2008-1754, (WIPO Jan. 5, 2009) (Admn. proceeding regarding seniorsanpaoloimi.com).

*Osram GmbH v. Transure Enterprise Ltd.*, D2009-0010, (WIPO Mar. 13, 2009) (Admn. proceeding regarding osramlighting.com).

*Berlitz Investment Corporation v. Transure Enterprise Ltd, Host Master*, D2009-0836, (WIPO Aug. 29, 2009) (Admn. proceeding regarding berlitzlanguage.com et al.).

*Compagnie Gervais Danone v. Transure Enterprise Ltd / Privacy*, D2009-1019, (WIPO Sep. 9, 2009) (Admn. proceeding regarding wwwactivia.com).

*Gaudi Trade SpA v. Transure Enterprise Ltd*, D2009-1028, (WIPO Sep. 16, 2009) (Admn. proceeding regarding gaudijeans.com).

*LEGO Juris A/S v. Transure Enterprise Ltd*, D20091347, (WIPO Dec. 19, 2009) (Admn. proceeding regarding legobioncle.com).

Exhibit 2
Page 11

*Associazione Radio Maria v. Transure Enterprise Ltd, Host Master*, D2009-1422, (WIPO
Dec. 14, 2009) (Admn. proceeding regarding radiomariatogo.org).

*Viacom International Inc. v. Transure Enterprise Ltd.*, D2009-1616, (WIPO Jan. 20,
2010) (Admn. proceeding regarding nickjrlive.com).

*F. Hoffmann-La Roche AG v. Transure Enterprise Ltd*, D2009-1729, (WIPO Feb. 9,
2010) (Admn. proceeding regarding phentermine-xenical-4you.com).

*Lemco, Inc. v. Transure Enterprise Ltd*, D2010-0300, (WIPO Apr. 20, 2010) (Admn.
proceeding regarding mewyorkandcompany.com et al.).

*SNCF - Société Nationale des Chemins de Fer Français v. Transure Enterprise Ltd
/Above.com Domain Privacy*, D2010-0513, (WIPO Jun. 4, 2010) (Admn. proceeding
regarding 12-15-sncf.com).

*F. Hoffmann-La Roche AG v. Above.com Domain Privacy / Shu Lin, Shu Lin Enterprises
Limited / Host Master, Transure Enterprise Ltd*, D2010-1986, (WIPO Jan. 19, 2011)
(Admn. proceeding regarding cheapest-xenical.com et al.).

*Aventis Pharma SA, Aventis Pharmaceuticals Inc, .Sanofi-AventisShu Lin v. Above.com
Domain Privacy*, D2010-2036, (WIPO Jan. 24, 2011) (Admn. proceeding regarding
wwwnasacortaq.com).

*Compagnie Générale des Etablissements Michelin v. Above.com Domain Privacy/
Transure Enterprise Ltd*, D2010-2085, (WIPO Jan. 31, 2011) (Admn. proceeding
regarding mapmichelin.com).

*Carol House Furniture, Inc. v. Above.com Domain Privacy / Host Master, Transure
Enterprise Ltd*, D2010-2102, (WIPO Feb. 1, 2011) (Admn. proceeding regarding
carrollhousefurniture.com).

*Allstate Insurance Company v. Above.com Domain Privacy / Host Master Transure
Enterprise Ltd*, D2011-0062, (WIPO Mar. 19, 2011) (Admn. proceeding regarding
asllstate.com).

*Association des Centres Distributeurs E.Leclerc - A.C.D Lec v. Ho Nim / Above.com
Domain Privacy*, D2011-0070, (WIPO Mar.14, 2011) (Admn. proceeding regarding
www-leclerc.com).

*California Milk Processor Board v. Above.com Pty Ltd/Shu Lin/Shu Lin Enterprises
Limited*, D2011-0149, (WIPO Mar. 24, 2011) (Admn. proceeding regarding
gotmilkscholarship.com).

*Intesa Sanpaolo S.p.A. v. Above.com Domain Privacy*, D2011-0228, (WIPO Mar. 25,
2011) (Admn. proceeding regarding ntesasanpaolo.com).

Exhibit 2
Page 12

*Intesa Sanpaolo S.p.A. v. Above.com Domain Privacy/ Transure Enterprise Ltd, Host Master*, D2011-0291, (WIPO Apr. 3, 2011) (Admn. proceeding regarding sanpaolomprese.com).

*Transure Enterprise Ltd / Above.com Domain Privacy*, D2011-0447, (WIPO Apr. 27, 2011) (Admn. proceeding regarding sncfhoraire.com).

*Tractor Supply Co. of Texas, LP & Tractor Supply Company v. Above.com Domain Privacy / Transure Enterprise Ltd*, D2011-0487, (WIPO May 16, 2011) (Admn. proceeding regarding tractorsupplycompeny.com).

*California Milk Processor Board v. Trellian Pty Ltd.*, D2011-0149, (WIPO May 24, 2011) (Admn. proceeding regarding gotmilkscholarship.com).

*State Farm Mutual Automobile Insurance Company v Transure Enterprise Ltd c/o Host Master*, FA 1176762, (Nat. Arb. Forum May 22, 2008) (Admn. proceeding regarding statefarmretires.com).

*Pacific Life Insurance Company and Pacific Life and Annuity Company v Transure Enterprise Ltd.*, FA 1218169, (Nat. Arb. Forum Sep. 24, 2008) (Admn. proceeding regarding myaccountpacificlife.com).

*Baylor University v Transure Enterprise Ltd c/o Host Master*, FA 1220900, (Nat. Arb. Forum Oct. 7, 2008) (Admn. proceeding regarding baylorofirving.com et al.).

*Ashley Furniture Industries, Inc. v Transure Enterprise Ltd. c/o Host Master*, FA 1227729, (Nat. Arb. Forum Nov. 11, 2008) (Admn. proceeding regarding ashleybeds.com).

*State Farm Mutual Automobile Insurance Company v Transure Enterprise Ltd. c/o Host Master*, FA 1230805, (Nat. Arb. Forum Dec. 1, 2008) (Admn. proceeding regarding statefarminsco.com).

*The American Automobile Association, Inc. v Transure Enterprise Ltd. c/o Host Master*, FA 1234734, (Nat. Arb. Forum Jan. 9, 2009) (Admn. proceeding regarding aaa-insurance.net et al.).

*CRC Health Corporation v Transure Enterprise Ltd c/o Hostmaster*, FA 123990, (Nat. Arb. Forum Feb. 13, 2009) (Admn. proceeding regarding crchealthgroup.com).

*Tropicana Entertainment Holdings, LLC v Transure Enterprise Ltd. c/o Host Master*, FA 1246025, (Nat. Arb. Forum Mar. 19, 2009) (Admn. proceeding regarding tropicanaentertainment.com).

Exhibit 2
Page 13

*AllSouth Federal Credit Union v Transure Enterprise Ltd c/o Host Master*, FA 1256922, (Nat. Arb. Forum May 27, 2009) (Admn. proceeding regarding allsouthsouthfederalcreditunion.com).

*Citizens Financial Group, Inc. and Charter One Financial, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1268301, (Nat. Arb. Forum Jul. 30, 2009) (Admn. proceeding regarding citizensbankcardservices.com et al.).

*The Royal Bank of Scotland Group plc v Transure Enterprise Ltd c/o Host Master*, FA 1268679, (Nat. Arb. Forum Aug. 5, 2009) (Admn. proceeding regarding rsbworldpay.com).

*Baylor University v Host Master c/o Transure Enterprise Ltd aka Host Master c/o DomainPark Ltd*, FA 1269912, (Nat. Arb. Forum Aug. 11, 2009) (Admn. proceeding regarding baylordentalcollege.com et al.).

*C P Baton Rouge, LLC v Transure Enterprise Ltd. c/o Host Master*, FA 1272685, (Nat. Arb. Forum Aug 19, 2009) (Admn. proceeding regarding belleofbatonrougecasino.com).

*Vanguard Trademark Holdings USA LLC v Transure Enterprise Ltd c/o Host Master*, FA 1273602, (Nat. Arb. Forum Aug. 20, 2009) (Admn. proceeding regarding nationalcarrentalsystem.com).

*State Farm Mutual Automobile Insurance Company v Transure Enterprise Ltd. c/o Host Master*, FA 1274192, (Nat. Arb. Forum Aug. 27, 2009) (Admn. proceeding regarding mystatefarminsurance.com et al.).

*Ryder System Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1274369, (Nat. Arb. Forum Aug. 31, 2009) (Admn. proceeding regarding ryderusedtrucksales.com).

*ViroPharma Incorporated v Transure Enterprise Ltd c/o Host Master*, FA 1276246, (Nat. Arb. Forum Sep. 15, 2009) (Admn. proceeding regarding viropharm.com).

*Academy, Ltd., dba Academy Sports and Outdoors v Transure Enterprise Ltd c/o Host Master*, FA 1283916, (Nat. Arb. Forum Oct. 27, 2009) (Admn. proceeding regarding academysportsandoutdors.com et al.).

*Dolce International Holdings, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1286083, (Nat. Arb. Forum Nov. 6, 2009) (Admn. proceeding regarding dolcehotel.com et al.).

*Sears Brands, LLC v Transure Enterprise Ltd c/o Host Master*, FA 1289248, (Nat. Arb. Forum Nov. 21, 2009) (Admn. proceeding regarding searautocenter.com).

*Starbucks Corporation v Host Master c/o Transure Enterprise Ltd*, FA 1290572, (Nat. Arb. Forum Dec. 1, 2009) (Admn. proceeding regarding starbucksnutrition.com).

Exhibit 2
Page 14

*Fiserv, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1291926, (Nat. Arb. Forum Dec. 15, 2009) (Admn. proceeding regarding caseshiller.com et al.).

*Cabela's, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1292036, (Nat. Arb. Forum Dec. 15, 2009) (Admn. proceeding regarding cabelaws.com et al.).

*Aeropostale, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1292041, (Nat. Arb. Forum Dec. 15, 2009) (Admn. proceeding regarding acropostale.com et al.).

*Vans Inc. v Transure Enterprise Ltd aka Host Master*, FA 1300854, (Nat. Arb. Forum Feb. 17, 2010) (Admn. proceeding regarding vansgirl.com).

*Hot Topic, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1301619, (Nat. Arb. Forum Feb. 22, 2010) (Admn. proceeding regarding hhottopic.com et al.).

*Edible Arrangements, LLC v Transure Enterprise Ltd c/o Host Master*, FA 1303677, (Nat. Arb. Forum Mar. 12, 2010) (Admn. proceeding regarding ediblearrnagments.com).

*Bank of America Corporation v Transure Enterprise Ltd c/o Host Master*, FA 1305972, (Nat. Arb. Forum Apr. 12, 2010) (Admn. proceeding regarding mail-bankofamerica.com et al.).

*Blu Media Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1307892, (Nat. Arb. Forum Mar. 30, 2010) (Admn. proceeding regarding justsuboys.com).

*State Farm Mutual Automobile Insurance Company v Host Master c/o Transure Enterprise Ltd*, FA 1308143, (Nat. Arb. Forum Apr. 7, 2010) (Admn. proceeding regarding state3farm.com).

*Nike, Inc., Converse Inc. and Hurley International LLC v Transure Enterprise Ltd c/o Host Master*, FA 1308870, (Nat. Arb. Forum Apr. 14, 2010) (Admn. proceeding regarding 3anike.com et al.).

*Academy, Ltd., d/b/a Academy Sports & Outdoors v Transure Enterprise Ltd c/o Host Master*, FA 1309191, (Nat. Arb. Forum Apr. 9, 2010) (Admn. proceeding regarding academysprorts.com).

*Bath & Body Works Brand Management, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1313048, (Nat. Arb. Forum Apr. 27, 2010) (Admn. proceeding regarding bathandbodywokrs.com).

*Morgan Stanley v Transure Enterprise Ltd c/o Host Master*, FA 1315189, (Nat. Arb. Forum Apr. 30, 2010) (Admn. proceeding regarding morganstaanley.com et al.).

Exhibit 2
Page 15

*Baylor University v Transure Enterprise Ltd c/o Host Master*, FA 1316358, (Nat. Arb. Forum Apr. 30, 2010) (Admn. proceeding regarding baylorcme.com et al.).

*James L. Throneburg v Transure Enterprise Ltd aka Host Master*, FA 1316450, (Nat. Arb. Forum May 3, 2010) (Admn. proceeding regarding throlo.com).

*Stump Printing Company, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1318873, (Nat. Arb. Forum May 28, 2010) (Admn. proceeding regarding shindingz.com).

*Pinnacle Entertainment, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1319905, (Nat. Arb. Forum May 28, 2010) (Admn. proceeding regarding wwwbelterracasino.com).

*CK Franchising, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1322334, (Nat. Arb. Forum Jun. 18, 2010) (Admn. proceeding regarding wwwcomfortkeepers.com et al.).

*Sunbelt Rentals, Inc. v Host Master c/o Transure Enterprise Ltd*, FA 1325884, (Nat. Arb. Forum Jun. 30, 2010) (Admn. proceeding regarding sunbeltrentels.com et al.).

*Caterpillar Inc. v Transure Enterprise Ltd a/k/a Host Master*, FA 1306349, (Nat. Arb. Forum Jul. 5, 2010) (Admn. proceeding regarding caterpilllar.com).

*United Services Automobile Association v Transure Enterprise Ltd c/o Host Master*, FA 1326392, (Nat. Arb. Forum Jul. 6, 2010) (Admn. proceeding regarding usaarewards.com).

*AutoZone Parts, Inc. and ALLDATA LLC v Shu Lin c/o Shu Lin Co aka Host Master c/o Transure Enterprise Ltd*, FA 1330042, (Nat. Arb. Forum Aug. 3, 2010) (Admn. proceeding regarding autotzone.com et al.).

*Benchmark Brands, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1330855, (Nat. Arb. Forum Jul. 20, 2010) (Admn. proceeding regarding foorsmart.com).

*The Gap, Inc. v Transure Enterprise Ltd c/o Host Master*, FA 1330887, (Nat. Arb. Forum Jul. 23, 2010) (Admn. proceeding regarding oldnacvy.com).

*John Middleton Co. v Transure Enterprise Ltd c/o Host Master*, FA 1331888, (Nat. Arb. Forum Jul. 27, 2010) (Admn. proceeding regarding blacknmilds.com).

*Great Lakes Services, LLC v Transure Enterprise Ltd c/o Host Master*, FA 1332797, (Nat. Arb. Forum Aug. 11, 2010) (Admn. proceeding regarding great-wolf-lodge.com).

*Vanguard Trademark Holdings USA LLC v Above.com Domain Privacy*, FA 1333300, (Nat. Arb. Forum Aug. 4, 2010) (Admn. proceeding regarding natioinalcarrental.com).

*W.W. Grainger, Inc. v Above.com Domain Privacy*, FA 1334458, (Nat. Arb. Forum Aug. 24, 2010) (Admn. proceeding regarding graiinger.com).

Exhibit 2
Page 16

*U.S. Smokeless Tobacco Manufacturing Company LLC v Above.com Domain Privacy*, FA 1336145, (Nat. Arb. Forum Aug. 30, 2010) (Admn. proceeding regarding skoalbotherhood.com et al.).

*Macy's West Stores, Inc. v Above.com Domain Privacy*, FA 1336279, (Nat. Arb. Forum Sep. 7, 2010) (Admn. proceeding regarding bloomingdalesoutlet.com).

*Allsup, Inc. v Above.com Domain Privacy*, FA 1336934, (Nat. Arb. Forum Aug. 25, 2010) (Admn. proceeding regarding myallsup.com).

*Enterprise Holdings, Inc. v Above.com Domain Privacy*, FA 1337435, (Nat. Arb. Forum Aug. 27, 2010) (Admn. proceeding regarding enterprosecarrental.com).

*John Middleton Co. v Above.com Domain Privacy*, FA 1337989, (Nat. Arb. Forum Sep. 7, 2010) (Admn. proceeding regarding blacknmildpits.com).

*Enterprise Holdings, Inc. v Above.com Domain Privacy*, FA 1344356, (Nat. Arb. Forum Oct. 28, 2010) (Admn. proceeding regarding enterptrise.com).

*Agilent Technologies, Inc. v Above.com Domain Privacy*, FA 1345546, (Nat. Arb. Forum Oct. 26, 2010) (Admn. proceeding regarding agelint.com).

*LF, LLC v Above.com Domain Privacy*, FA 1348403, (Nat. Arb. Forum Nov. 29, 2010) (Admn. proceeding regarding lowesblowes.com et al.).

*AllSouth Federal Credit Union v Above.com Domain Privacy*, FA 1350114, (Nat. Arb. Forum Nov. 15, 2010) (Admn. proceeding regarding allsouthfederalbank.com).

*ADT Services AG and ADT Security Services, Inc. v Above.com Domain Privacy*, FA 1352206, (Nat. Arb. Forum Nov. 24, 2010) (Admn. proceeding regarding adtipalarm.com).

*Wells Fargo & Company v Above.com Domain Privacy*, FA 1352947, (Nat. Arb. Forum Nov. 30, 2010) (Admn. proceeding regarding wellafrgo.com).

*National Westminster Bank plc v Above.com Domain Privacy*, FA 1355980, (Nat. Arb. Forum Dec. 6, 2010) (Admn. proceeding regarding natwestoffsore.com).

*Retail Royalty Company and AEO Management Co. v Above.com Domain Privacy*, FA 1357326, (Nat. Arb. Forum Dec. 16, 2010) (Admn. proceeding regarding americaneagleaoutfitters.com et al.).

*Victoria's Secret Stores Brand Management, Inc. v Above.com Domain Privacy*, FA 1358247, (Nat. Arb. Forum Dec. 16, 2010) (Admn. proceeding regarding cvictoriassecret.com et al.).

Exhibit 2
Page 17

*OneWest Bank, FSB v Above.com Domain Privacy*, FA 1358624, (Nat. Arb. Forum Dec. 23, 2010) (Admn. proceeding regarding onewestbankbenefit.com).

*Fandango, Inc. and Daily Candy, Inc. v Above.com Domain Privacy*, FA 1360961, (Nat. Arb. Forum Jan. 4, 2011) (Admn. proceeding regarding daliycandy.com et al.).

*DIRECTV, Inc. v Above.com Domain Privacy*, FA 1361654, (Nat. Arb. Forum Jan. 19, 2011) (Admn. proceeding regarding directvco.com et al.).

*Choice Hotels International, Inc. v Above.com Domain Privacy*, FA 1364256, (Nat. Arb. Forum Feb. 10, 2011) (Admn. proceeding regarding choicehotelsw.com et al.).

*Morgan Stanley v Above.com Domain Privacy*, FA 1366174, (Nat. Arb. Forum Feb. 14, 2011) (Admn. proceeding regarding organstanleyclientserv.com).

*State Farm Mutual Automobile Insurance Company v Above.com Domain Privacy*, FA 1367034, (Nat. Arb. Forum Feb. 15, 2011) (Admn. proceeding regarding state4farm.com et al.).

*SeaWorld LLC v Above.com Domain Privacy*, FA 1369247, (Nat. Arb. Forum Mar. 9, 2011) (Admn. proceeding regarding seaworldcamp.com).

*National Westminster Bank plc v Above.com Domain Privacy*, FA 1370746, (Nat. Arb. Forum Feb. 28, 2011) (Admn. proceeding regarding natwestbankonlineplc.com).

*Churchill Insurance Co. Ltd. v Above.com Domain Privacy*, FA 1371570, (Nat. Arb. Forum Mar. 17, 2011) (Admn. proceeding regarding churchillcarinsureance.com).

*Churchill Insurance Co. Ltd. v Above.com Domain Privacy*, FA 1371588, (Nat. Arb. Forum Mar. 16, 2011) (Admn. proceeding regarding churchilcarinsurance.com).

*The Weather Underground, Inc. v Above.com Domain Privacy*, FA 1374597, (Nat. Arb. Forum Apr. 5, 2011) (Admn. proceeding regarding eweatherunderground.com et al.).

*JELD-WEN, inc. v Above.com Domain Privacy*, FA 1375661, (Nat. Arb. Forum Apr. 8, 2011) (Admn. proceeding regarding jelwend.com).

*Moroccanoil, Inc., Moroccanoil Israel Ltd, 3903150 Canada Inc., dba Moroccanoil v Above.com Domain Privacy*, FA 1378443, (Nat. Arb. Forum Apr. 25, 2011) (Admn. proceeding regarding morocanoil.com).

*Morgan Stanley v Above.com Domain Privacy*, FA 1380941, (Nat. Arb. Forum May 3, 2011) (Admn. proceeding regarding morgnstanleyclientserv.com).

Exhibit 2
Page 18

*New Tropicana Holdings, Inc. v Above.com Domain Privacy*, FA 1381763, (Nat. Arb. Forum May 5, 2011) (Admn. proceeding regarding tropac.com).

*Archstone Communities LLC v Above.com Domain Privacy*, FA 1381797, (Nat. Arb. Forum May 16, 2011) (Admn. proceeding regarding archstonemeadowbrook.com).

*State Farm Mutual Automobile Insurance Company v Above.com Domain Privacy*, FA 1382812, (Nat. Arb. Forum May 10, 2011) (Admn. proceeding regarding statefarmmutalfunds.com).

*Bath & Body Works Brand Management v Above.com Domain Privacy*, FA 1383344, (Nat. Arb. Forum May 17, 2011) (Admn. proceeding regarding bathandbodyworkscoupon.com).

*Enterprise Holdings, Inc. v Above.com Domain Privacy*, FA 1385865, (Nat. Arb. Forum May 28, 2011) (Admn. proceeding regarding enterpriiserentacar.com).

Exhibit 2
Page 19

Exhibit 3

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Association des Centres Distributeurs E.Leclerc - A.C.D Lec v. Ho Nim / Above.com Domain Privacy

## Case No. D2011-0070

### 1. The Parties

The Complainant is Association des Centres Distributeurs E.Leclerc - A.C.D Lec of Ivry sur Seine, France, represented by Inlex IP Expertise, France.

The Respondents are Ho Nim of Shanghai, the People's Republic of China; Above.com Domain Privacy of Beaumaris, Australia (hereinafter "the Respondent").

### 2. The Domain Name and Registrar

The disputed domain name <www-leclerc.com> is registered with Above.com, Inc.

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on January 12, 2011. On January 13, 2011, the Center transmitted by email to Above.com, Inc. a request for registrar verification in connection with the disputed domain name. On January 14, 2011, Above.com, Inc. transmitted by email to the Center its verification response confirming that the Respondent Ho Nim is listed as the registrant and providing the contact details. On January 21, 2011 the Center contacted the Registrar regarding the change of name of the registrant to Above.com Domain Privacy, and on January 24, 2011 the Registrar confirmed that the details provided in their registrar verification of January 14, 2011 remained current.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on January 28, 2011. In accordance with the Rules, paragraph 5(a), the due date for Response was February 17, 2011. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's default on February 18, 2011.

The Center appointed Harini Narayanswamy as the sole panelist in this matter on February 28, 2011. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

The Complainant is a French entity that runs a supermarket chain under the name "Association des Centres Distributeurs E.Leclerc." The Complainant uses the trademark LECLERC for its business and owns the registered community trademark No. 2700656 for its trademark LECLERC that was filed on May 2002.

The Respondent registered the disputed domain name <www-leclerc.com> on December 10, 2009.

### 5. Parties' Contentions

#### A. Complainant

The Complainant requests the transfer of the disputed domain name on the grounds that the disputed domain name is identical or confusingly similar to its trademark LECLERC. The Complainant states it owns several French, Community and International trademarks with the term "Leclerc" and some of these marks are registered since 1967. The Complainant contends that the trademark is being currently used and it has acquired undisputed status. The "www" prefix with the trademark in the disputed domain name does not reduce confusion with its trademark as "www" stand for "world wide web" which is common for any URL.

Exhibit 3
Page 20

The Complainant states that the Respondent has no rights or legitimate interests in the disputed domain name, as the Respondent is not commonly known by the domain name or has a company or entity with that name or uses it for fair use purposes. The Respondent has not been authorized by the Complainant to use the LECLERC mark and the website "www.www-leclerc.com" is used as a parking website.

The Complainant argues that the disputed domain name was registered and is being used in bad faith, as Respondent ought to have searched for any potential infringement prior to registration. The Complainant states that it opened its first store in Landerneau, Brittany and presently has over five hundred supermarkets in France, consequently its trademark LECLERC is well known in several European countries. The Complainant states that attempts to contact the Respondent by registered mail on June 14, 2010 and on October 6, 2010, through the Registrar were unsuccessful. Further, the website content has no relationship with the typically French name "Leclerc". The sole purpose of the Respondent registering the disputed domain name was to benefit from the fame of the Complainant's trademark and cause Internet users confusion, as users may associate the disputed domain name with the Complainant.

## B. Respondent

The Respondent did not reply to the Complainant's contentions.

## 6. Discussion and Findings

To obtain the remedy of transfer of the disputed domain name, the Policy states that the Complainant has to establish three elements under paragraph 4(a).

(i) The disputed domain name is identical or confusingly similar to a mark in which the Complainant has rights; and

(ii) The Respondent has no rights or legitimate interests in respect of the disputed domain name; and

(iii) The disputed domain name was registered and is being used in bad faith by the Respondent.

## A. Identical or Confusingly Similar

The first element under paragraph 4(a) of the Policy requires the Complainant to prove that the disputed domain name is identical or confusingly similar to a mark in which it has rights.

The Complainant has established its rights in the LECLERC trademark by submitting documents of its trademark registration in several classes and its use for an extended period. The disputed domain name consists of the trademark LECLERC with the prefix "www-". Several UDRP decisions have recognized that a domain name that consists of a trademark along with the prefix "www" is confusingly similar to the trademark. See for instance *Allianz SE v.Venkateshwara Distributor Private Limited/Privacy Prote.,org*, WIPO Case No. D2010-0951, where the domain name <wwwallianz.com> was found confusingly similar to the ALLIANZ trademark.

The addition of a hyphen with the prefix "www" is insignificant and does little to avoid confusing similarity with the trademark. See *Suncor Energy Inc. v. Kean Lee Lim*, WIPO Case No. D2010-0320. (<www-petro-canada.com> and <www-petro-points.com>) where adding a hyphen after "www" did not affect the finding of confusing similarity with the trademark. In the present case, the Panel finds that the disputed domain name <www-leclerc.com> is confusingly similar to the Complainant's trademark LECLERC despite the addition of the prefix "www" and the hyphen, as the trademark is the core term of the disputed domain name.

For the above reasons discussed the Panel finds the Complainant has satisfied the first requirement under paragraph 4(a) of the Policy.

## B. Rights or Legitimate Interests

The second element under paragraph 4(a) of the Policy requires the Complainant to make a *prima facie* finding that the Respondent lacks rights or legitimate interests in the disputed domain name.

The Complainant asserts that the Respondent has no rights or legitimate interests in the disputed domain name, as the Respondent has not been given any authorization to use its trademark. Under paragraph 4(c) of the Policy the Respondent can demonstrate its rights or legitimate interests in the disputed domain name if the Respondent can establish that:

(i) The Respondent has used or made demonstrable preparations to use the disputed domain name in connection with a *bona fide* offering of goods or services;

(ii) The Respondent has been commonly known by the disputed domain name; or

(iii) The Respondent is making legitimate noncommercial or fair use of the domain name without intent for commercial gain to misleadingly divert consumers or tarnish the trademark of the Complainant.

The Policy provides that paragraph 4(c) of the Policy is not an exhaustive listing. A respondent can therefore establish rights by showing any aspect mentioned in paragraph 4(c) of the Policy or put forward submissions other than those mentioned in paragraph 4(c) of the Policy to establish rights in the domain name. The Respondent in the present case has not responded in these proceedings and has not provided any material to show any rights or legitimate interests in the disputed domain name.

The web pages linked to the disputed domain name show that the website functions as a link farm. A link farm website has little or no original content but consists of only sponsored hyperlinks to various other websites. Registration of domain names containing trademarks that are used for link farm websites to redirect traffic for the respondent's commercial gain through sponsored links is not

## Exhibit 3
## Page 21



che AG v. Transure
was being used to direct
tivity was not considered
ent of commercial gain is not
des Chemins de Fer

The Panel finds the facts and circumstances in the present case shows that the Respondent has not used the disputed domain name for a *bona fide* offering of goods or services or that the Respondent has not been commonly known by the disputed domain name or makes any legitimate noncommercial fair use of the website linked to the disputed domain name. In the absence of any submissions from the Respondent, the Panel finds from the material on record that the Respondent lacks rights or legitimate interests in the disputed domain name.

In the Panel's view, the use of the Complainant's mark in the disputed domain name is likely to mislead the public and Internet users that the disputed domain name refers to the Complainant. This is because the Respondent is not connected with the Complainant or its business but uses the Complainant's trademark in the disputed domain name in a manner that is likely to mislead unsuspecting Internet users. A domain name that gives a false impression to Internet users and misleads Internet users does not confer legitimate rights. This view has been upheld in several prior UDRP decisions, see for instance, *Pfizer Inc. v. Alex Schreiner/ Schreiner & Co.*, WIPO Case No. D2004-0731.

For the reasons discussed the Panel is satisfied that the Complainant has made a *prima facie* case that the Respondent has no rights and legitimate interests in the disputed domain name as required under the second element of paragraph 4(a) of the Policy.

## C. Registered and Used in Bad Faith

The third element under paragraph 4(a) of the Policy requires the Complainant to prove that the disputed domain name has been registered and is being used in bad faith.

The Complainant has argued that the Respondent has registered the disputed domain name for the fame associated with its mark. Given the prior use of the trademark by the Complainant, it is the Panel's view that the use of the Complainant's trademark in the disputed domain name gives rise to the inference that the Respondent ought to have registered the disputed domain name for its trademark value. Further the use of sponsored links by the Respondent are apparently for purposes of generating Internet traffic and for deriving some form of commercial gain by using the Complainant's trademark in the disputed domain name.

The Panel finds the Respondent has intentionally tried to take advantage of the reputation associated with the Complainant's mark and has registered the disputed domain name for the purpose of attracting Internet users to its website by creating a likelihood of confusion with the Complainant's trademark as to the source, sponsorship, and affiliation of the website which is recognized as bad faith registration and use under paragraph 4(b)(iv) of the Policy. See *AXA, S.A. v. PrivacyProtect.org / Koddos, Ronald Linco,* WIPO Case No. D2010-0270.

Adding "www" to the trademark is recognized as a form of typo-squatting that is characterized as bad faith registration and use under the Policy. The use of the prefix "www" with the trademark is itself a strong indication of bad faith that shows the Respondent intended to take unfair advantage of a common typing error on the part of Internet users. See *Compagnie Gervais Danone, Bonafont S.A. de C.V v. Privacy Protec.org,* WIPO Case No. D2009-1659 and *Schering-Plough Corporation, Schering Corporation,*

*Schering Plough Ltd. v. Stementali Quemistas,* WIPO Case No. D2009-0841. (Domain names that begin with "www" followed by the name of the website are calculated to divert Internet traffic and confuse end uses seeking to find the website the complainant.)

The Panel also notes that the registrant of the disputed domain name was changed subsequent to the registrar verification. The change of registrant could not have been done without the Registrar's assistance. Further the Registrar has not provided any satisfactory reply to the Center's queries about such changes to the disputed domain name, which was supposed to be in a locked status. Changes to the domain name registration in this manner would appear to be in this Panel's view in contravention to the Policy. It also gives rise to suspicion about the Registrar's motives in facilitating changes being made to the disputed domain name registration.

Based on the circumstances in the present case, where the Respondent has added the "www" prefix in the disputed domain name, which is recognized as a classic form of typo-squatting, the Respondent's use of the website connected to the disputed domain name as a link farm, and the changes to the domain name registration after the Registrar verification, in the Panel's view demonstrate bad faith registration and use of the disputed domain name by the Respondent.

The Panel finds the Complainant has successfully established that the disputed domain name was registered and is being used in bad faith.

## 7. Decision

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <www-leclerc.com> be transferred to the Complainant.

Harini Narayanswamy
Sole Panelist
Dated: March 14, 2011

Exhibit 3
Page 22